BREAUX, C. J.
Plaintiff claims a large amount and interest from defendant. It holds promissory notes of sums due.
Plaintiff is a commercial partnership. The defendant was one of the partners of O. St. Dizier & Co. St. Dizier died in July, 1907. Since that time the partnership has been dissolved, but business, for some time after his death, was carried on, intending thereby to liquidate its affairs and pay the debts. The St. Dizier firm was organized in 1902 to manage and conduct a commercial business, including agricultural interests and the operation of a cotton ginnery, all of which was under the active management of the partner, since deceased, who was charged with the management and authorized to incur debts, make notes, draw checks and bills of lading, copying, from the article of partnership, “all as if he owned the business.”
Since 1903, plaintiff firm was the commission merchant of the defendant firm.
[1] Defendant, in the first place, pleaded the exception of lis pendens.
The administratrix filed an account of administration and a supplemental account of her administration. Plaintiff opposed the homologation of these accounts and alleged the amount due, which it claimed, and urged a number of reasons why the account should not be homologated. The administratrix recognized plaintiff as a creditor, in accordance with the decree of the court in the probate proceedings. Defendant’s position is that these proceedings are in the nature of lis pendens.
They are not. The two, the petition for a judgment, to which we first referred, and the proceedings on the probate side of the court, are all before the same court; they are not before different courts. Besides, the defendant in the. main action is not a party in the proceedings in opposition to the homologation of the account. The defendant, Gosserand, is bound in solido, and can be sued alone, without giving good ground for the plea of lis pendens.
[2] The defendant, in the next place, prayed for trial by jury, which was granted. Plaintiff filed a motion to rescind the order for trial by jury. The order for trial by jury was not rescinded. Plaintiff, in the mo *1059 tion to rescind, assailed the defendant’s affidavit for trial by jury on the ground that it was not true, and that it was only a subterfuge to the end of obtaining a trial by jury. It averred that, if permitted to introduce evidence, it would prove the falsity of the affidavit. Plaintiff was not permitted to prove the allegations contained in its motion; the motion was overruled. Plaintiff complains of this ruling, and asks this court to pass upon the question at this time. This we must decline to do, as it would serve no purpose. The case is now before us on the merits for decision. A decision at this time, upon the point just noted — i. e., truthfulness of the affidavit vel non — would be an empty form, for it would not be sufficient ground to remand the case for a new trial. If we were to remand the case, it would occasion, at most, costs and delays, only to bring it up on appeal again. We are utilitarian enough to prefer the useful to the useless, and therefor proceed with the decision of the issues of the case.
[3] The answer contains a denial of all liability, admits the signature, controverts plaintiff’s claims, avers that the notes represent an amount advanced by plaintiff to the late Olivier St. Dizier to deal in spot cotton and cotton for future delivery, in which he engaged on his own responsibility, as he was not authorized by the articles of partnership, which business was limited to the selling of merchandise at retail; that he had no right to sign notes; that they were entirely without consideration; that the fact that they were without consideration was well known to plaintiff.
The case was tried before the court and jury, and plaintiff’s claim was rejected.
The grounds of defense are: First, that the articles of partnership did not authorize the business carried on by O. St. Dizier, the partner, and, in consequence, the partnership was not bound; second, that' the plaintiff knew all the facts alleged, none the less advanced large amounts to the late O. St. Dizier to speculate in cotton, both spot and futures, and that these advances were not made to O. St. Dizier & Co.; third, that defendant knew nothing of this speculation in cotton.
Propositions of Fact.
In 1903, the partnership of O. St. Dizier & Co. opened an account with plaintiff. It consigned each year thereafter a number of bales of cotton, against which advances were made. The relations were pleasant. The partnership had a good rating, and advances were made without stint.
It happened that, at the death of St. Dizier, the business was in a confused state, as the books had not been carefully kept; the partnership had dealt in cotton.
Defendant, Gosserand, avers that St. Dizier dealt in cotton for his own account, and made notes of the firm in favor of the plaintiff to pay his losses. Defendant adds that he knew nothing of the business; never looked into the books; did not know what his partner was doing.
Others testified; among these Mr. Ben Jewell, who said that it was generally known that St. Dizier speculated in futures, and that these speculations were for account of the firm.
The bookkeeper of the firm, a Mr. Abadie, testified that St. Dizier bought futures for the firm with money furnished by the plaintiff. He is the only witness who testified directly upon the subject for defendant. The books of the firm did not include the least reference regarding any transaction in futures. 1-Ie failed to directly identify plaintiff with the business of buying futures; he only knew that he had seen drafts in payment of future contracts; whether paid by plaintiff or not is not clearly stated. Witness said:
“I knew, from the general run of affairs, St Dizier was speculating in futures.”
*1061 Still lie testified that there was no entry of drafts by St. Dizier or the bookkeeper. Pie is certain that there were transactions in futures, but does not know positively who furnished the cash.
Defendant does not raise the contention that the dealing in futures was against good morals, and his only contention on this score was that plaintiff furnished the money with which St. Dizier speculated on his personal account. The evidence here is particularly weak, and it does not sustain the point. All business was conducted in the name of the partnership, and letters, papers, checks, and drafts all were in the name of the partnership.
No witness testified directly upon the subject, while there is testimony negativing the charge as relates to futures. There is no denying the fact that plaintiff did make advances to deal in spot cotton; in fact, the partnership was plaintiff’s customer, and together plaintiff and defendant shared in whatever profit there was in the business; the plaintiff by charging commission, interest, and other charges usually made by commission merchants, and the partnership of St. Dizier & Go., through the managing partner, by seeking to increase the revenues of the concern by the sale of cotton. As to futures, while it is true that St. Dizier, the partner, since deceased, dealt in futures, the defendant failed in the attempt at connecting plaintiff therewith.
There is direct testimony by W. A. Roy, a traveling clerk of plaintiff and of W. B. Thompson, positively denying that the plaintiff ever sold cotton for future delivery for account of the partnership of St. Dizier or for St. Dizier personally, and that they knew anything of the dealings in futures. The drafts on plaintiff firm were produced, and not one showed that they were drawn in favor of any broker in futures.
After the death of Olivier St. Dizier, the widow, as administratrix, continued the business of the firm for over a year and a half, with the assent of the defendant. Cotton was shipped to plaintiff firm, to be credited to the partnership account of St. Dizier & Co. After this experience in conducting the partnership for some time, the administratrix and Gosserand, the defendant, petitioned the court for a respite. The name of plaintiff was placed on the list of the creditors, and at the creditors’ meeting Thompson & Co. appeared and proved the amount due them by the St. Dizier partnership, including Gosserand, the partner. Not a word was said at the time, nor the least objection urged.
One of the purposes of the partnership, we have noted, was to conduct a “ginnery” business. Had the partnership carried on a ginning business in accordance with the purpose for which it was organized, the purchase of cotton and shipping it to a commission merchant, and the application of the proceeds of the sale, in part at least, applied to the expenses of the business, there could have been no valid objection. The same is true of the “commercial business.” It was within the scope of the business, as well as “agricultural” business, and other words used in the charter to authorize the business conducted by the St. Dizier firm, particularly if the managing partner was invested with the power to create debts, draw notes, checks, and bills of exchange.
As above stated, a respite was applied for by defendant, Gosserand, and Mrs. St. Dizier, administratrix, and they presented a petition to the court, with a list of creditors of the partnership, and asked for a respite.
The petition, with the accompanying list, was supported by oath of the defendant, Gosserand. In fact, at no time defendant, Gosserand, objected to the debt until some time after the death of St. Dizier, when he *1063 was called upon to recognize the debt, and that was after the respite proceedings had been had.
Propositions of Law.
The partners’ liability in a commercial partnership, with the scope of the managing partner’s power, presents the question of law for decision. It is very evident, as relates to law, that the managing partner may do such acts as are necessary to carry on the business in the usual way. There is no reason to assume, with the evidence of record, that the managing partner did not carry on the business in the usual way.
It is also true that the partner, who dissents from an act of the partnership, can thereby escape liability for the particular act by giving timely notice. In ordinary partnerships, we take it, it applies to commercial partnerships; the other partners than those, or the one who has made unauthorized purchases may elect whether they will take such purchase on joint account. O. O. art. 2822. So that, if not bound under the articles of agreement (we think they are), instead of giving notice or electing as authorized, the defendant was, to say the least, silent and assented.
[4,5] The defendant never dissented to any act, and was always, to say the least, silent, if not quiescent. A partner who for years remains silent, where the partnership business is being conducted, and who is always ready to receive his share of the profit and who takes part in continuing the business, even after his partner’s death, always, without the least objection, is not in a position to successfully deny liability.
The business was conducted, we take it, in accordance with the custom of the place in which the partnership was conducted; that is, in accordance with the custom prevailing generally in the cotton belt. Lecompte v. Pitcher, 11 Ky. Law Rep. 362.
The court will take notice of prevailing customs. Shoe Co. v. Long Bell Lumber Co., 86 Mo. App. 438.
[6] It is common knowledge that merchandise in the country includes in great part dealings in cotton, as it is the basis of business; the producer delivers the cotton to the country merchant, and the country merchant ships it to his commission merchant. Each, generally, is a creditor before the delivery of the cotton.
We have considered the issues carefully, and are unable to agree with the verdict.
It is therefore ordered, adjudged, and decreed that the verdict of the jury and the judgment of the court are avoided, annulled, and reversed. It is ordered, adjudged, and decreed that judgment is hereby rendered in favor of the plaintiff for the sum of $2,-442.75, with 8 per cent, interest per annum thereon from the 1st day of November, 1907, until paid; second, for the further sum of $2,623.61, with 8 per cent, interest per annum thereon from the 15th day of November, 1907, until paid, less $877.42, paid April 13, 1908; third, for the further sum of $2,-623.61, with 8 per cent, interest per annum thereon, from December 1, 1907, until paid; fourth, for the further sum of $2,442.75, with 8 per cent, interest per annum thereon from December 15, 1907, until paid; fifth, for the further sum of $2,623.61, with 8 per cent, interest per annum thereon from January 1, 1908, until paid; sixth, and for the further sum of $2,623.61, with 8 per cent, interest per annum thereon from January 15, 1908, until paid; with 10 per cent, addition on the aggregate of the different amounts before mentioned as fee of attorney, and that defendant pay the costs of both courts.