(132 So. 504)

**SCHROCK** et al. v. **BOLDING** et al.
No. 30846.

Jan. 5, 1931.

Rehearing Denied Feb. 2, 1931.

R. V. Reeves, of Oak Grove, and George Wesley Smith, of Rayville, for appellants.

Fred G. Benton, Dudley L. Weber, and Dewey J. Sanchez, all of Baton Rouge, for appellees.

O'NIELL, C. J.

This is a suit to annul two transactions, by one of which the plaintiffs' interest in their mother's succession was transferred to the defendants, and by the other of which the plaintiffs' interest in their grandfather's succession was transferred to the defendants. The plaintiffs prayed also for an order compelling the defendants to account for the rents and revenues and assets of the two estates. The district court gave judgment for the plaintiffs as prayed for. The defendants have appealed from the decision.

The plaintiffs' grandparents, being the defendants' parents, were William R. Bolding and Mrs. Canzada Seamons Bolding. They were married in West Carroll parish on the 5th of January, 1877. She was granted a separation of property by a decree of court on the 7th of October, 1892. She died, intestate, in West Carroll parish on the 12th of January, 1895, leaving an estate, being her separate property, consisting of about 400 acres of land in West Carroll parish, and leaving as her heirs four sons and a daughter, issue of her marriage to William R. Bolding. The daughter was Martha Bolding, who married Henry Schrock. The plaintiffs, Clarence and Curtis Schrock, are the only issue of that marriage. The four sons of Mrs. Canzada Seamons Bolding were Wilton, Linal, Enoch W., and Benson H. Bolding. Enoch W. Bolding and Benson H. Bolding are the only survivors of the four sons, and are the defendants in this suit.

Wilton Bolding died intestate, and without descendant heirs, on the 30th of March, 1899, leaving as his heirs at law his father and his three brothers and their sister, and leaving as his estate only his fifth interest in his mother's estate. His father, William R. Bolding, therefore, inherited $\frac{1}{4}$ of Wilton's fifth interest in the estate of Wilton's mother, and his sister and three brothers each inherited $\frac{1}{4}$ of $\frac{3}{4}$ of Wilton's fifth interest in the estate. Rev. Civ. Code, arts. 904 and 911. The father, William R. Bolding, then owned $\frac{1}{20}$, and the sister and three brothers of Wilton Bolding each owned $\frac{1}{5}$ plus $\frac{1}{4}$ of $\frac{3}{4}$ of $\frac{1}{5}$, or $\frac{19}{80}$, of the estate of the deceased, Mrs. Canzada Seamons Bolding.

Linal Bolding died, intestate, and without descendant heirs, on the 21st of May, 1909, leaving an estate consisting of his $\frac{19}{80}$ of his mother's estate besides two small tracts of land in West Carroll parish and several town lots in Oak Grove, in that parish. Linal's father, William R. Bolding, therefore, inherited from Linal $\frac{1}{4}$ of his $\frac{19}{80}$, or $\frac{19}{320}$, of Linal's mother's estate; and his sister and two brothers each inherited $\frac{1}{3}$ of $\frac{3}{4}$ of Linal's $\frac{19}{80}$, or $\frac{19}{320}$, of their mother's estate; and the father and the two brothers and the sister of Linal each inherited also $\frac{1}{4}$ of his two small tracts of land and of his town lots. The father, William R. Bolding, then owned $\frac{1}{20}$ plus $\frac{19}{320}$, or $\frac{7}{64}$, and Enoch W. Bolding and Benson H. Bolding and Mrs. Martha Bolding Schrock each owned $\frac{19}{64}$ of the estate of Mrs. Canzada Seamons Bolding; and each of them owned also $\frac{1}{4}$ of the two small tracts of land and of the town lots, inherited from Linal Bolding.

Mrs. Canzada Bolding Schrock died, intestate, on the 15th of January, 1910; and the plaintiffs, Clarence and Curtis Schrock, inherited her $\frac{19}{64}$ of the estate of their grandmother and the $\frac{1}{4}$ of the two small tracts of land and the town lots, formerly belonging to Linal Bolding. Clarence Schrock was then only three years of age and Curtis only four months. Their father, Henry Schrock, qualified and was confirmed as their natural tutor on the 15th of March, 1910; and on the next day he presented a petition to the district judge, alleging that the property which his

two children had inherited from their mother was an undivided interest in property owned jointly by the two children and their grandfather, W. R. Bolding, and their uncles, Enoch W. Bolding (whom he called Jim Bolding) and Benson H. Bolding, and alleging that he, as tutor of the children, was no longer willing that they should remain coproprietors or joint owners with the major co-owners; that the property was not divisible in kind; that he desired that it should be sold at private sale to effect a partition; that two of the co-owners, Enoch W. and Benson H. Bolding, had offered to buy the interest of the minors for $2,250; and that a sale of the children's interest at that price would be advantageous to them. He prayed that a family meeting should be convened to advise as to whether the sale should be made to effect a partition of the property. He alleged that the children owned $5/16$ of the land which had formerly belonged to their grandmother, and $1/4$ of the two small tracts of land and the town lots which had belonged formerly to Linal Bolding; and that William R. Bolding owned $1/16$ and that Enoch W. Bolding and Benson H. Bolding each owned $5/16$ of the land which had belonged to their mother, and $1/4$ of the two small tracts and the town lots which had belonged to their brother, Linal Bolding. On the inventory of the estate of Mrs. Martha Bolding Schrock, the minor children's interest in the land which had belonged to their grandmother was said to be $5/16$ interest, and was appraised at $1,275; whereas, according to our calculation, their interest in the land was $19/64$; and, as it is apparent that the whole estate was valued at $4,080, the $19/64$ should have been appraised at $1,211.25, which is $1/20$ less, or $63.75 less, than the supposed $5/16$ was appraised at. On the recommendation of the family meeting, approved by the judge, the interest of the two minor children, said to be $5/16$ of the property which had belonged to their grandmother and $1/4$ of the two small tracts and town lots which Linal Bolding had bought, was sold to Enoch W. Bolding and Benson H. Bolding for $2,250 cash; which was $395 more than the appraisement of the interest of the minor children in all of the property. The sale was made on the 18th of May, 1910. We mention the error in the calculation of the interest of the minor children in the property formerly belonging to their grandmother, because it is said in the brief filed in their behalf that the error in the calculation of their interest in the property was detrimental to them. As a matter of fact it was advantageous to them, because it gave them a better price than they were entitled to.

The grounds on which the plaintiffs seek to annul the sale dated the 18th of May, 1910, were twofold, viz.: First, that all of the property should have been sold to effect the partition, and, second, that the sale was made, not to effect a partition, but merely to transfer the title to Enoch W. Bolding and Benson H. Bolding, and, ostensibly, to support and educate the minor children. It is true that, in the procès verbal of the proceedings of the family meeting, it was said that the sale of the interest of the minor children to Enoch W. Bolding and Benson H. Bolding should be made "for the better support and education of said minors, and for the purpose of effecting a partition." But, in the petition for the calling of a family meeting, it was alleged that the tutor representing the minor children was not willing that they should continue to hold the property jointly with the coproprietors, and that the purpose of the proposed sale was to effect a partition. The case is therefore very similar to Hand v. Harper, 171 La. 47, 129 So. 664. In that case, the natural tutor of two minor children filed a

petition to sell the ⅓ interest of the children in 360 acres of land to one of the major co-owners, at private sale, to effect a partition. The family meeting, instead of advising that the sale should be made to effect a partition, stated, as the reason why the sale should be made, that the children and their brothers and sisters were not able to improve the property or to pay the taxes on it, and that it was therefore in the interest of the minor children that the property should be sold at private sale. The proceedings were governed by Act No. 25 of 1878, p. 47, amending and re-enacting section 2667 of the Revised Statutes, which permitted the sale of minor children's property at private sale for the purpose of effecting a partition—but for no other purpose. In the case referred to, the minor children, having arrived at the age of majority, sued to annul the sale, on the grounds: First, that only their undivided interest, and not the whole property, was sold; and, second, that the sale was made, not to effect a partition, but because of the children's inability to improve the property or to pay the taxes on it. Our ruling was that the fact that the family meeting declared that the inability of the children to improve the property or to pay the taxes on it made it advisable that it should be sold did not alter the fact that the purpose of the sale was to effect a partition, and that the other complaint, that only the minor children's interest, instead of the whole property, was sold, was barred by the prescription of six months, under Act No. 53 of 1912, p. 63. This case also is governed by Act No. 25 of 1878 and Act No. 53 of 1912. Accordingly, the declaration of the family meeting that the sale was necessary or advisable "for the better support and education of said minors" did not alter the fact that the purpose of the sale was to effect a partition, as far as the minor children's interest was affected; and the other complaint, that only the minor children's interest, instead of the whole property, was sold, is barred by the prescription of six months, under Act No. 53 of 1912.

Our opinion, therefore, is that the judgment appealed from is wrong in so far as it annuls the sale made by Henry Schrock, tutor, to Enoch W. Bolding and Benson H. Bolding. on the 18th of May, 1910.

William R. Bolding, grandfather of the plaintiffs, and father of the defendants, died, intestate, in the parish of West Carroll, on the 27th of December, 1924, leaving an estate worth about $17,500, consisting principally of houses and lots in Oak Ridge and lands in West Carroll Parish. The plaintiffs inherited a third and the defendants two thirds of the estate. One of the plaintiffs, Clarence Schrock, was then eighteen years of age, and the other, Curtis Schrock, was fifteen. The defendants did not have the succession of their father opened, but took possession of the property and administered it as their own. On the 7th of April, 1928, Curtis Schrock, being then eighteen years and seven months of age, was emancipated by a judgment of court. Meanwhile, Clarence Schrock, who was then twenty-one years and nearly six months of age, had moved to Baton Rouge, and had resided there for several years. He and the younger brother were almost illiterate, hardly able to read or to write anything more than their names. They were utterly ignorant of the value of their interest in their grandfather's estate. On the 9th of April, 1928, which was two days after Curtis Schrock was emancipated, the act of partition was made, which is complained of in this suit. It was intended to be, and was in fact, a division of the entire estate of William R. Bolding. between Enoch W. and Benson H. Bolding on the one side, and Clarence and Curtis

Schrock on the other side. Clarence and Curtis Schrock got 40 acres of land, and a strip 35 feet wide off of the rear end of two lots in Oak Grove. The 40 acres of land, with 40 acres which the two Boldings got, was affected by a mortgage in favor of the Federal Land Bank, which had five years to run, and which the Boldings assumed to pay. The 35-foot strip of land in Oak Grove was vacant land, the remaining portion of the two lots being occupied by a garage, and the whole being subject to a lease, which had a year to run, the rentals being payable to the Boldings. All of the property which the two Schrocks got out of the transaction would have been worth approximately $2,500 if it had been unincumbered. The two Boldings, on the other hand, got approximately 545 acres of land, 8 lots in Oak Grove, and 3 lots in the village of Pioneer; all of the property retained by the Boldings being worth approximately $15,000. The Schrocks were not advised by an attorney at law, or by any one but the two Boldings. The grounds on which the plaintiffs seek to annul the transaction by this suit are lesion exceeding a fourth of the value of the property, and error and fraud. Article 1397 of the Revised Civil Code provides that acts of partition are subject to rescission for any of the causes for which other transactions are subject to rescission, such as fraud or error; and article 1398 provides that partitions are subject to rescission for lesion, and that, as equality is the basis of such transactions, it suffices, to justify a rescission, that the lesion exceeds a fourth of the value of the property. The defense which the defendants set up in this case was that they had transferred to their father the greater part of the property which constituted his estate, and that the transfers were simulations, made for the purpose of shielding the property from their creditors,

when they (the transferors) were financially embarrassed. The district judge, very properly, sustained the plaintiffs' objection to the introduction of evidence to prove the simulation. In the absence of fraud or error, the parties to an act of sale are not allowed to prove simulation by parol evidence, or by any other evidence than a counter letter or something equivalent thereto. Rawle v. Fennessey, 6 Mart. (N. S.) 206; Michoud v. Lacroix, 8 Mart. (N. S.) 445; Delahoussaye's Heirs v. Davis' Widow & Heirs, 19 La. 409; Hebert v. Lege, 29 La. Ann. 511; Anderson v. Benham, 40 La. Ann. 336, 4 So. 454; Barnes v. Barnes, 155 La. 981, 99 So. 719.

■ The defendants contended in the district court that they had explained to the plaintiffs, at the time of the partition, that they (the defendants) were the true owners of the greater part of the property, the title to which stood in the name of their father, and that the so-called act of partition was a compromise of their contention that the transfers made by them to their father were simulations. Aside from the fact that parol evidence was not admissible to prove the simulations, we doubt that it would matter at all if the transaction, called a partition, was a compromise; for article 1402 of the Revised Civil Code declares that the action of rescission for error, fraud, or lesion, is applicable, "not only against all acts bearing the title of partition, but even against all those which tend to the division of property between coheirs, whether such acts be called sales, exchanges, compromises, or by any other name."

"A partition, even when it takes on itself the aspect and quality of a compromise, may be attacked for lesion beyond one-fourth, but when the partition is once made and the parties compromise on disputes growing out of it, the compromise is unassailable for le-

sion." Williamson v. Amilton, 13 La. Ann. 387, citing Civ. Code, arts. 1440 and 1441 (Rev. Civ. Code, arts. 1402 and 1403).

The evidence leaves no doubt that there was lesion exceeding a fourth of the value of the property, and that there was imposition and overreaching on the part of the defendants, in the act of partition between the plaintiffs and the defendants, dated the 9th of April, 1928, for which the plaintiffs are entitled to a rescission of the transaction.

The judgment appealed from is annulled in so far as it annulled the sale of the plaintiffs' property to the defendants dated the 18th of March, 1910; and the plaintiffs' demand to annul that transaction is rejected. In all other respects the judgment appealed from is affirmed. The plaintiffs, appellees, are to pay the costs of this appeal, and the defendants, appellants, are to pay the costs incurred in the district court.