**GUMPERT v. SIGNAL et al. \***
No. 14684.

Court of Appeal of Louisiana. Orleans.
Jan. 29, 1934.

For former opinion, see 151 So. 136.

Benjamin Y. Wolf, of New Orleans, for appellant Wm. P. Hickey, Recorder of Mortgages.

Eugene Thorpe, of New Orleans, for appellee.

HIGGINS, Judge.

The issues presented in this matter result from the trial judge making absolute a rule taken by the civil sheriff to partially cancel and erase the minors' general mortgage in so far as it affects a certain piece of real estate sold by the sheriff under executory process and referring the minors' claims to the proceeds of the sale.

The rule was not defended by the tutrix of the minors, but was resisted solely by the recorder of mortgages, who alone has appealed.

In our original opinion, which was not unanimous, we reversed the judgment of the trial court and dismissed the rule. 151 So. 136.

The record shows that on March 2, 1923, Solomon Signal, who was married and had minor children, conventionally mortgaged the community property herein involved for the sum of $463 in favor of T. Pick, and caused the same to be duly recorded; the mortgage containing the pact de non alienando, waiver of appraisement, and confession of judgment clauses.

Solomon Signal died on September 20, 1923, leaving a widow and five minor children and one major. Mary Lazard, the widow of the deceased, on November 23, 1923, caused his succession to be opened in the civil district court for the parish of Orleans; the inventory showing that the entire estate consisted of community property which was appraised at $1,300. An abstract of the inventory was recorded in the mortgage office on December 28, 1923, and the widow qualified as natural tutrix of her minor children.

On February 24, 1926, T. Pick, as the owner of the mortgage note, foreclosed via executiva against the widow individually and as natural tutrix of the minors and the major son to recover the sum of $463, with 6 per cent. interest from March 27, 1924, until paid, subject to a credit of $30 on account of matured interest, and notice of demand for payment was served on the parties.

Mary Lazard, as widow of Solomon Signal, in her own behalf and in behalf of the minor children, on March 31, 1926, filed a petition in the succession proceedings alleging that the community property, which was owned by herself and her children in the proportion of an undivided one-half each, was about to be sold under executory process in the Pick suit pending in the civil district court; that she was unable to pay the mortgage debt, which was long past due; that she had an opportunity of negotiating a loan for an amount sufficient to pay the whole sum due in the foreclosure suit, and that it was for the best interest of the minors that she be allowed to grant a mortgage for $750 on the said property; that the undertutor of the said minors had taken cognizance of the recommendations and representations and approved them; and that the court should dispense with calling a family meeting in accordance with the provisions of Act No. 110 of 1920. The prayer was as follows: "Wherefore, the premises, annexed affidavit and consent considered, petitioner prays that the Court approve and homologate the recommendations set forth in the foregoing petition and that the Court order and authorize your petitioner in her capacity as natural tutrix of the minors, Solomon Signal, Jr., Albert Signal, Alma Signal, Vera Signal and Otis Signal, to grant a mortgage on the property hereinabove described in the sum of Seven Hundred Fifty Dollars ($750.00), with eight per cent, 8% interest from date until paid, and to secure same with all usual security clauses. And that the Court further order that the general mortgage in favor of the minors herein be held ineffective, insofar as the mortgage she is authorized herein to make, and petitioner prays for such further order as the Court may deem proper."

The undertutor acquiesced in the matter in the following language: "Having taken cognizance of the foregoing petition and being thoroughly conversant with the facts therein set forth, I join in the prayer thereof and ask that the mortgage as prayed for by the natural tutrix herein be ordered and authorized by the court."

The district judge, based upon the recommendations of the tutrix and undertutor, as contained in the petition, issued the following order:

"It is ordered by the Court that the recommendations of the natural tutrix and the concurrence thereto of the undertutor of the minors, be and the same are hereby approved and homologated; and, accordingly, let the petitioner, Mrs. Mary Lazard, widow of Solomon Signal, natural tutrix of the said minors be authorized and she be hereby empowered to mortgage the property owned by the minors herein and described in the foregoing petition, said mortgage to be in the sum of Seven Hundred Fifty Dollars ($750.00) and bearing eight per cent. 8% interest from date until paid, with all usual security clauses.

"And it is further ordered that the general mortgage in favor of the said minors, recorded in M. O. B. 1258 Folio 224 of the Parish of Orleans, be ineffective insofar as the mortgage herein being authorized by the court."

On April 7, 1926, George R. Gumpert loaned the widow, individually and as natural tutrix of the minor children, and the major son, the sum of $750 under a conventional mortgage which purports to be in accordance with the recommendations of the tutrix and undertutor and the order of the judge; the mortgage containing the pact de non alienando, confession of judgment, and waiver of appraisement clauses, and being properly recorded. The money realized from this loan was used to liquidate the mortgage of Pick and other expenses and costs incidental thereto, and it was canceled from the mortgage records. The new mortgage was several years past due, the mortgage creditor being compelled to pay the taxes assessed against the real estate, when on October 25, 1932, Mr. Gumpert instituted executory process, against the widow individually and as natural tutrix and the major son. The property was seized and adjudicated at public sale to Mr. Gumpert for $100, which amount, together with all the costs and fees of the civil sheriff, have been paid to him by the adjudicatee.

The general mortgage in favor of the minors appeared on the mortgage certificate, and the civil sheriff filed a rule against the recorder of mortgages and the minors through their natural tutrix to show cause why the general mortgage in favor of the minors should not be partially canceled and erased in so far as it affected the property in question and the minors' rights referred to the proceeds of the sale.

■ ■ The attorney for the recorder of mortgages makes the following contentions: First, that the tutrix, undertutor, and district judge

were without authority to waive the benefit of appraisement in granting the conventional mortgage in favor of Mr. Gumpert; second, that their attempt to subordinate and make the minors' general mortgage inferior in rank to the conventional mortgage was null and void; and, third, that, if these representatives of the minors had the authority to partially cancel the minors' mortgage, the tutrix, in granting the conventional mortgage in favor of Mr. Gumpert, went beyond the express authority of the recommendations of the tutrix and undertutor and the order of the court.

The first argument is clearly without merit. In the case of Martin v. Lake, 37 La. Ann. 763, the Supreme Court said: "Article 342 of the Civil Code, which prohibits the sale of a minor's property for less than its appraised value mentioned in the inventory, applies only to sales provoked by his tutor, during the course of his administration, and not to sales under execution, either of judgments, or by executory process for the foreclosure of a mortgage executed by the tutor with the authorization of a competent court, under the advice of a family meeting."

█ With reference to the second point, it appears to be conceded that the widow had the right to mortgage her undivided one-half interest in the property, the major son his pro rata interest, and that the tutrix, undertutor, and the district judge, as representatives of the minors, had the authority, under the articles of the Civil Code and Act No. 110 of 1920 and Act No. 319 of 1926, dealing with the tutorship of minors, to place a mortgage on the minors' interest in the property without the necessity of convoking a family meeting. The complaint is not that the mortgage in favor of Mr. Gumpert was illegal, but that the purported act of giving it priority over the minors' general mortgage on the widow's undivided one-half interest in the community property was invalid because there are only two ways in which a minor's general mortgage can be released—i. e., first, by substituting a special mortgage in accordance with article 325 et seq. of the Civil Code; and, second, by furnishing a tutor's bond in accordance with Act No. 223 of 1920 (as amended).

The provisions of the Civil Code concerning tutorship of minors, i. e., article 246 et seq., designate the tutor, the undertutor, and the district judge as the persons having authority to represent minors. These parties authorized and confected the mortgage under which the plaintiff claims. It was through this means that the property, the modest home of the family, was saved from being sold in the year 1926 under the Pick mortgage, which certainly primed the minors' general mortgage. To say that the tutrix, the undertutor, and the district judge did not have authority to place the mortgage in question on the property and give it priority over the minors' mortgage, in view of the purpose for which it was made, would be to say that, under the law, they were powerless to help the minors and had to permit Mr. Pick to foreclose and sell the property, although the law enjoins upon them the duty of protecting the minor's interest as a prudent administrator.

It is difficult to imagine that any one would have advanced the necessary funds under such circumstances on a mortgage secondary to the minors'. The transaction was entered into in good faith and for the obvious advantage and interest of the minors in a matter of absolute necessity. This is conclusively shown by virtue of the fact that the sheriff was about to sell the property under the executory proceedings based upon the Pick mortgage, and the loan from Mr. Gumpert saved the property from being sold and the family have had the use and benefit of the home from 1926 to the present time.

We believe that the articles of the Civil Code relating to tutorship of minors and Act No. 110 of 1920 and Act No. 319 of 1926, vested the necessary authority in these representatives of the minors to do what they did.

The rights of the minors were in no way compromised or surrendered, as Gumpert's mortgage was no more onerous than Pick's; both containing the same clauses.

Our Supreme Court has recognized the right of the tutor, undertutor, and the district judge to subordinate the minor's tacit mortgage to a conventional mortgage where it was to the evident advantage of the minors, or absolutely necessary in order to obtain a loan to protect the minor's interest. Beauregard v. Leveau, 30 La. Ann. 302; Fontenette v. Veazey, 1 La. Ann. 236.

Did the tutrix, in granting the conventional mortgage in favor of Mr. Gumpert, go beyond the recommendations of the tutrix and undertutor as contained in the petition and exceed the express authority contained in the order of the district judge? It is said that neither the petition nor the order of the court specifically authorized placing in the mortgage the pact de non alienando, confession of judgment, and waiver of appraisement clauses. It is true that the language of the petition and the order of the court do not refer to these clauses by name, but both the petition and order do set forth that the loan of $750 is to be secured by a mortgage containing "all usual security clauses."

█ It seems to us that the clauses with reference to the pact de non alienando, confession of judgment, and waiver of appraisement are so generally used in conventional mortgages that the courts can take judicial notice of those three clauses as "usual security clauses." This court and other courts, in fixing the quantum in damage suits for personal injuries, have taken judicial notice of the fact that the purchasing power of money in-

creases and decreases from time to time, and this economic condition appears to be more uncertain than the definite and positive provisions of the three aforementioned clauses. But, even if we have no right to take judicial cognizance of these stipulations as the "usual security clauses" in mortgages, since the petition and the order of the court contain that phrase, it would seem reasonable that we should endeavor, from the record, to ascertain what was meant thereby, and not ignore it. At the time the petition containing the recommendations was presented and the order signed granting authority to place a mortgage on the property for the purpose of saving it from being sold in the Pick proceedings, the tutrix, undertutor, and the district judge had before them the mortgage which Mr. Pick was foreclosing upon. This mortgage contained the pact de non alienando, confession of judgment, and waiver of appraisement clauses. Pick's mortgage unquestionably had priority over the minors' general mortgage, and, if the property had been sold in that proceeding, there is no doubt that the purchaser would have obtained a title free of the minors' mortgage. That it was the intention and purpose of the parties to place Gumpert in the same position as Pick is inescapable. A reading of the records in the succession proceeding and the executory process matter instituted by Mr. Pick leads one to no other conclusion than that the tutrix, undertutor, and the district judge unquestionably referred to these clauses. To say otherwise would be in effect striking from the petition and the order the language to the effect that the $750 was to be secured by "all the usual security clauses."

In the case of Hand et al. v. Harper et al., 171 La. 47, 129 So. 664, 667, the Supreme Court stated the issue as follows:

"The grounds alleged for annulling the sale, so far as pressed, may be stated as follows:

"(1) That the sale made by plaintiffs' tutor to defendant is null, because the family meeting did not recommend that plaintiffs' interest be sold at private sale to effect a partition, but instead recommended that a private sale be made for the reason that it was shown that neither their father, nor they, nor their brother and sisters, were able to properly improve the said property and pay the taxes on the same."

In upholding the sale, the court said:

"The act contemplates that the property may be sold at private sale, when the family meeting so recommends, to effect a partition, and not when the purpose is to effect something else. The procès verbal of the meeting does not expressly say that the sale is recommended to effect a partition. The question is therefore presented whether that document sufficiently discloses that the sale was recommended for the purpose of effecting a partition. We think that it does sufficiently so disclose. The family meeting was convoked for the single purpose of effecting a partition by private sale. Immediately after the oath was administered to the members of the meeting, and before they began their deliberations, the object of the meeting was explained to them by the notary. The meeting, as is necessary in such cases, made an appraisement, which is an act peculiar to partitions by private sale, and which shows that the meeting had in mind that the sale was to be made to effect a partition. The finding that the father of plaintiffs and his remaining children were unable to improve the property properly was only a reason given for recommending the sale, and was not a statement of the purpose to be accomplished by the sale. In our view, the sole purpose of recommending the sale, as disclosed by the proceedings, was to effect a partition, and that express mention of the purpose to effect one was inadvertently omitted by the notary from the procès verbal. This ground of attack therefore should not prevail."

See, also, Schrock et al. v. Bolding et al., 171 La. 929, 132 So. 504.

The authorities cited in our original opinion show that the tutor, in carrying out the order of the judge, cannot go beyond the recommendations of the family meeting, and the order of the court homologating them. In those cases the tutor did something beyond the authority vested in him by the recommendations of the family meeting and the order of the court approving them. The recommendations of the family meeting and the order of the court were silent as to the specific act complained of that the tutor performed in excess of the authorization granted. This was not only true in the cases cited in the original opinion, but also in the case of Fradella et al. v. Pumilia et al., 177 La. 47, 147 So. 496. In the instant case, however, this situation does not obtain, for the recommendations of the tutrix, concurred in by the undertutor and authorized by the district judge, expressly state that the new loan was to be secured by a mortgage containing "all usual security clauses" and that the minors' mortgage, which was specifically referred to, would be "ineffective in so far as the mortgage herein being authorized by the court" (was concerned). In short, the tutrix carried out the order of the district judge and did not disobey it.

In any event if we have no right to take judicial cognizance of what the words "usual security clauses" in conventional mortgages mean, and we further have no right to interpret the phrase in the light of all of the facts contained in the record, then it is certainly clear that, in the interest of justice, the plaintiff was entitled to have the case remanded for the purpose of receiving additional evidence to determine what was intended by the language "all usual security clauses." The plaintiff loaned his money in good faith for the purpose of preventing the sale of the mi--

nors' property, and should not be defeated in his right to recover his money because his attorney failed to offer evidence tending to show what "all usual security clauses" in conventional mortgages were, and depended upon the court taking judicial cognizance thereof, or interpreting that clause in the light of the facts contained in the record. But we do not consider it necessary to remand the case, because we feel confident, first, that we have the right to take judicial cognizance of the fact that the pact de non alienando, confession of judgment, and waiver of appraisement stipulations are "usual security clauses" in conventional mortgages; and, secondly, that the record shows that those clauses were intended by the language of the petition and the order of the court authorizing the confecting of the Gumpert mortgage.

For the reasons assigned it is ordered, adjudged, and decreed that our original opinion and decree be annulled, avoided, and reversed, and it is further ordered that the judgment of the district court be reinstated and affirmed and made the final judgment of this court.

Original decree recalled; judgment of district court reinstated and affirmed.

WESTERFIELD, Judge (dissenting).

For the reasons given by me in the original opinion of Gumpert v. Signal (La. App.) 151 So. 136, I respectfully dissent.

JANVIER, Judge (concurring).

I concur in what my associate has said and in the decree affirming the judgment appealed from, but I desire to place of record the reasons which impelled me to concur in the decree originally rendered and also additional reasons which now prompt me to reverse my views and to concur in the now prevailing opinion and decree.

I did not agree with the author of the opinion in his view that the words "usual security clauses" were insufficiently broad to include the pact de non alienando, the waiver of appraisement, and the confession of judgment, but I felt that there was no authority in the laws of Louisiana for the subordination of the recorded tacit mortgage in favor of minors to a conventional mortgage granted by a tutor or a tutrix on his or her property.

I believe that the words "usual security clauses" are sufficiently clear and sufficiently broad to authorize the mortgage in the form in which it was executed, particularly since the former act of mortgage, which was being substituted and which contained clauses identical with those which were embodied in the act involved here, might have been resorted to for explanation of the meaning of the term "usual security clauses," if explanation was necessary and if that term could be said to be ambiguous.

Furthermore, if there be any doubt as to whether the clauses which are contained in the mortgage act are "usual security clauses," we could have remanded the matter for administration of proof as to just what are such "usual clauses."

In Boudreaux v. Lower Terrebonne Ref. & Mfg. Co., 127 La. 98, 53 So. 456, which, in many respects, present facts remarkably similar to those found here, the Supreme Court, in effect, said that, if the meaning of such a term is not clear, explanation may be given. There a tutrix was authorized to mortgage property which was already burdened with a tacit mortgage in favor of the minors. It was directed that the mortgage should be executed "with the usual conservatory clauses."

That a court may take judicial notice of the usual clauses inserted in such a mortgage, I entertain no doubt. In Thompson v. Gosserand, 131 La. 1056, 60 So. 682, 685, the Supreme Court said, "the court will take notice of prevailing customs."

The prevailing custom which was taken notice of in that case was a custom in the cotton business. If we can take judicial notice of the customs in the cotton business, surely we can take judicial notice of customs prevailing in notarial acts.

My concurrence in the decree which rejected the application for the cancellation of the inscription of the tacit mortgage was based on the view that the subordination of a minor's tacit mortgage is tantamount to an erasure thereof, and that consequently it could be effected only by the granting of a special mortgage on the other property of the natural tutor or tutrix, as is provided by article 325, Civil Code, or by the giving of bond, which is now permitted by Act No. 223 of 1920, as amended by Act No. 68 of 1924, and by Act No. 283 of 1926.

There is no doubt of the right to mortgage the minor's half of property for necessities, but there is a clear distinction between that and releasing or subordinating a tacit mortgage in favor of minors and bearing upon the undivided half of the property which belongs to a tutor or tutrix.

That a release of the tacit mortgage in order to permit the sale of the property even for extreme necessities of the minors is not permissible was held several times, notably in Lyman v. Stroudbach, 47 La. Ann. 71, 16 So. 662, and in Barton v. Hickson, 134 La. 278, 63 So. 902. In the former the natural tutrix, in her petition for authority to sell the property, had declared: "That the minors are in necessitous circumstances; that the property owned by them does not produce a revenue sufficient for their support and maintenance, nor to pay city and state taxes on the immovable property; that it is to the interest of the said minors, of absolute necessity, and to their evident advantage, that all, or a portion at least, of the immovable property own-

ed by them should be sold according to law, to procure means for their support and maintenance, and to prevent the sale of said immovable property for taxes, which is threatened by the state tax collector of the upper district of this parish."

The adjudicatee at the sale refused to take title, contending that, although the title to the undivided portion belonging to the minors was perfectly good, there was no way, except by the granting of a special mortgage, in which the tacit mortgage could be released. The court said: "The plaintiff, Lyman, brings this suit to compel the defendant to accept title, who declined to complete his purchase, on the ground that the title to the property is not good; that the minors' mortgage on the same has not been legally canceled, and still exists."

In holding that the adjudicatee could not be compelled to take title, the court used the following language:

"The mortgage of the minors unquestionably rests upon the undivided half of the community sold by the tutrix.

"The mortgage of the minors necessarily must remain in force on all the immovable property of the tutor, as a security for his administration from the day of his appointment until the final settlement of the tutorship. This is no longer a debatable question. See Schneider v. Burns, 45 La. Ann. 875, 13 So. 175, and authorities cited."

In Barton v. Hickson, supra, the Supreme Court held that the tacit mortgage could not be released in any such manner. The opinion is very short, and reads as follows: "Plaintiff is tutrix of her children, and brings this suit to compel defendant to accept title to a certain piece of real estate which he has agreed to buy from her. A family meeting was duly held and duly homologated, recommending that this property be sold free of the legal mortgage of the minors upon it, and that the purchase price be deposited in the registry of the court, there to remain until reinvested under the orders of the court. Defendant contends that notwithstanding said family meeting proceedings said property would pass to him, subject to said mortgage, if he accepted title. In that connection he is entirely correct. Life Association v. Hall, 33 La. Ann. 49; Lyman v. Stroudbach, 47 La. Ann. 71, 16 So. 662; Succession of Keppel, 113 La. 246, 36 So. 955; also Succession of Wegmann, 110 La. 930, 34 So. 878, and cases cited in these cases. The cases of Koehl v. Solari, 47 La. Ann. 890, 17 So. 464, Succession of Viard, 106 La. 73, 30 So. 246, Succession of Richardson v. Richardson's Heirs, 52 La. Ann. 1402, 27 So. 890, and Succession of Allen, 48 La. Ann. 1240, 20 So. 683, cited by plaintiff, are not in point. The sales there involved were for the purpose of effecting a partition."

It appeared to me, when we first considered the matter, that those cases were controlling here.

Now, however, actuated by the fact that if Gumpert, whose assistance has during the past eight or nine years maintained the minors in the property, will sustain a heavy loss as a result of his benefaction, and by the further fact that the denial of his prayer for the erasure of the inscription will produce a most inequitable result, I have made further search and have finally found a case in which that which was done here was approved by the Supreme Court. That case is Beauregard v. Leveau, 30 La. Ann. 302. I cannot distinguish it from this case. There money had been loaned on a mortgage on property owned jointly by a minor and her natural tutrix. The mortgage, after proper formalities, had been made superior to the tacit mortgage of the minor on the portion of the property which belonged to the tutrix.

When the mortgagee attempted to foreclose on the note, he was met with the defense, among others, that no such subordination could be made in this state. The court held otherwise.

The following statement shows how the conventional mortgage had come into existence and how it had been given priority over the tacit mortgage: "In February 1873 Madame Marie Beauregard, the widow of Paul Beauregard and mother of plaintiff, presented her petition to the Second Court of this City, alleging that she was under the necessity of borrowing about two thousand dollars to pay the taxes upon her property to defray the cost of urgent repairs of it, and to pay the expenses of educating and maintaining her only child, but that she could not obtain any loan of money because the only security she had to offer was a mortgage upon her property, and it already stood affected by the general mortgage in favor of her child (the plaintiff) resulting from her tutrixship. She prayed the convocation of a family meeting to advise upon the propriety of granting a priority of mortgage over the child's general mortgage to any one who would lend her the required sum. The meeting was held—the result of the deliberations was that she was authorized to postpone the general mortgage of her child to the special one in contemplation—the advice of the family meeting was approved by the judge and a decree entered accordingly—and the defendant loaned her the money and she executed the mortgage."

In holding that, as the result of that action, the conventional mortgage was properly given priority over the tacit mortgage, the Supreme Court said:

"In Fontenette v. Veazey, 1 La. Ann. 236, where the mother and natural tutrix convoked a family meeting for the same purpose as in this case, viz., to postpone the minors' mortgage, to enable her to borrow money to repair her dwelling which was falling into

.decay and ruin, it was objected that the legal mortgage of the minors could only be removed in the mode pointed out by the Act of 1830, the Court say ;—The act of 1830 presents no obstacle to the release of the tacit mortgage in favor of minors in cases like the present, nor has it reference to such cases. Among the duties which devolve upon tutors are those of providing for the maintenance, health, and personal safety of their wards, in the execution of which the property of the minor himself may be sold, and if necessary, the capital may be used. In the present instance property subject to the minors' mortgage has been sold for purposes for which their own might have been validly alienated.

"The property of the plaintiff's mother and tutrix in the present case, like that of Fontenette, was in need of repair, and in addition to that need unpaid taxes were hanging over it. The money borrowed was in part wanted for the conservation of the property. Without it, a sale for taxes might have accomplished its alienation, or the further progress of decay would have rendered it uninhabitable, and destroyed or decreased its value by the dilapidation of the houses. Another part of the money borrowed was needed for the education and maintenance of the child whom the mother naturally and laudably desired to fit for the active duties of life. She has received the benefit of the defendant's money and does not propose either to return it to him, or to pay back or allow to her mother that part of it which was expended exclusively for her benefit. In the account filed by the mother there was no mention of these charges, and it was opposed by the daughter, not because it failed to charge her with her education and maintenance, but because the mother had not charged herself with one half of the price received for a slave sold after the father's death.

"The formalities of law were complied with in the proceedings of the family meeting. The relatives and friends of the plaintiff advised the borrowing of the money for needful purposes. There is no pretence that it was applied wrongfully, and it is against law, and yet more against equity and good conscience, that the plaintiff should enjoy the benefits derived from the defendant's loan, and wrest from him the security specially hypothecated to secure its return, without making that return herself."

In Boudreaux v. Lower Terrebonne Ref. & Mfg. Co., supra, is found another case involving in part the same legal situation. The court could have decided the matter on the point urged here had it felt that such subordination of the minors' mortgage could not be effected. It did not do so, but, in a lengthy opinion, granted the same relief on entirely different grounds. It appears to me that the

court entertained no doubt that such subordination could be properly made.

By these two decisions and also by that rendered in Fontenette et al. v. Veazey, 1 La. Ann. 236, I have been forced to the conclusion that there is a legal distinction between canceling a tacit mortgage and subordinating it to a conventional one, and that, although the cancellation cannot be brought about except by a special mortgage or a bond, the subordination may be effected in the manner followed here.

I therefore feel that the inscription should be canceled, and consequently I concur in the decree.