Rosenda Burckhart Sanz et al., Plaintiffs and Appellants, *v.* José Zeda, etc., Defendant and Appellee.

No. 9019. Argued December 12, 1944.—Decided May 9, 1945.

*Pedro E. Anglade* for appellants. *Luis Mercader* and *J. Córdova Rivera* for appellee.

MR. JUSTICE SNYDER delivered the opinion of the court.

The appellants inherited an urban property from their mother. While they were still minors [1] and under the *patria potestas* of their father, the latter petitioned the district court for authority to borrow $5,000 in the name of the minors and to execute as security therefor a mortgage on the said property. The petition recited that the property was presently subject to he mortgages of $1,000 and $917.20 which had been executed pursuant to previous judicial authorization; that suits to foreclose these two mortgages had been filed; that this loan was necessary to pay these mortgage debts or otherwise the property herein, valued at $15,000, would be sold at foreclosure; that the loan was also necessary to repair the property, to pay outstanding taxes, and to satisfy other pressing needs of the minors.

The child who was of age consent to the transaction. The district court conducted a hearing as to the necessity and convenience of the said loan. The district attorney manifested that he had no opposition thereto. By order of July 31, 1931, the district court granted the authority to make the loan and mortgage.

This case has the special feature that the money was borrowed from the tutor of an insane veteran whose affairs were also being administrated by the same district court. The tutor, who was the father of the veteran, petitioned for

---

[1] With the exception of Rosenda Burckhart Sanz, who was already of age at this time.

permission to make the loan herein. He recited that he was required under Federal law to invest the money of his son beneficially; that the interest paid thereon as a bank deposit was small; and that he deemed this loan to be a good investment. He set forth the outstanding encumbrances, the pending foreclosure suits, and the dispositive portion of the order of the court of July 31, 1931 authorizing the father of the appellants to make this loan. He specifically stated in his petition that the loan was to be made at the rate of interest of 1 per cent per month, "with the other provisions and conditions inherent in this class of contracts". The order of the court granting this petition repeated these terms and conditions.

By a public deed executed on October 30, 1931 the loan and mortgage transaction between the father of the minors and the tutor of the veteran was consummated. The dispositive portions of the aforesaid orders of court were incorporated in and made a part of this instrument.[2] It also provided that the "annual interest shall be at the rate of twelve per cent payable by accrued months; but if interest accrues for three months without being paid, by this fact alone the entire obligation shall be considered as matured, the creditor being thereby empowered to demand payment of all the principal and interest."

In view of the fact that the mortgage debtors had failed to pay the monthly interest installments for the past nine months, on February 3, 1933 the mortgage creditor—the insane veteran, representated by his tutor—filed a summary mortgage foreclosure proceeding in which he claimed the principal of $5,000, interest in the amount of $450, and $500 for costs, expenses, and attorney's fees as provided in the mortgage. The property was duly adjudicated to the mortgage creditor at a public sale on August 31, 1933 for $6,200, the amount then due the creditor.

---

[2] In addition, the outstanding mortgages were duly cancelled by this same deed.

On attaining their majority the appellants [3] filed the instant suit, praying for annulment of the summary foreclosure proceeding and other relief. After a trial on the merits, the district court entered a judgment dismissing the complaint. This is an appeal from that judgment.

The only contention of the appellants requiring consideration here is that the father of the minors exceeded the authorization contained in the order of court of July 31, 1931 permitting execution of the deed of mortgage to the extent that we are required to nullify the summary foreclosure thereof. The clauses in the mortgage deed particularly complained of are those which provide for (1) interest at 12 per cent, plus an acceleration clause for maturity on default; (2) the appraisal of the property by the contracting parties at $10,000 pursuant to § 127 of the Mortgage Law as amended by Act No. 69, Laws of Puerto Rico, 1931; (3) payment of $500 for costs, expenses, and attorney's fees in the event of judicial foreclosure proceedings. [4]

In *United States* v. *524.72 Acres of Land*, 33 F. Supp. 474 (Dist. Ct. La., 1940) the United States expropriated a certain tract of land, joining the record owner as a defendant. The heirs of one Jones intervened, claiming that they were the owners. Among other things, they contended as here that a mother with *patria potestas* had exceeded her authority in executing a mortgage to secure a loan made for the benefit of her minor children. In disposing of this contention, the court used the following language (pp. 465-6):

"The main objection is that the provisions of the family meeting, quoted under (a), made a part of the judicial authority, do not permit a mortgage to secure the payment of the note to contain

---

[3] The appellants also include Rosenda Burckhart Sanz who, as we have seen, was of age when all these events occurred.

[4] We do not consider certain arguments rejected by the lower court and not renewed here. Nor do we consider contentions made for the first time on appeal.

the pact de non alienando, to import a confession of judgment, to give the right to executory process, to prescribe a waiver of homestead, and to provide for sale without the benefit of appraisement.

"Our view is that the language used authorizes a loan; the conditions necessary to secure the loan are implied.

*  *  *  *  *  *  *

"The language is 'and the minors' interest in the property to be mortgaged to secure same, together with all the interest of their mother and brother and sisters, who are the major heirs.' This meant a mortgage with its incidental conditions to be reached by agreement between the parties. The mother as natural tutrix for the minors and for herself, individually, the major children for themselves, are on the one hand, and the money-lending bank is on the other hand. She was authorized to borrow giving a mortgage on the property for security. The mortgage was made to import a confession of judgment, to include the waiver of homestead, as well as the waiver of the benefit of appraisement, because the bank would not make the loan otherwise. The natural tutrix was authorized to grant or withhold these conditions in the broad exercise of her discretion. She was not forced to accept them. The law presupposes she acted to the best interests of her children.

"All of the above conditions are the usual and customary provisions of loans made in Louisiana secured by mortgage on rural real estate. Though apparently drastic, they insure prompt collection, and, obviously, enable one to get the accommodation and at a more favorable rate of interest." [5]

We are aware of the dangers involved in any undue relaxation of the limitations, traditionally imposed by the civil law upon tutors and parents with *patria potestas*. Cf. Tutorship—Order for Hypothecation of Minors' Immovables—

---

[5] We put to one side certain state Louisiana cases as inapplicable, *Gumpert* v. *Signal*, reported in 151 So. 136 (1933), 152 So. 403 (1934), 156 So. 174 (1934) because they were concerned with the phrase "all usual security clauses" which specifically appeared in the judicial authorizations involved therein and which did not appear in the order of court of July 31, 1931 herein.

There is likewise inapplicable here the *Resolución de 27 de enero de 1900* of the *Dirección General de los Registros* of Spain, because there the tutor entered into an entirely different kind of contract than the one authorized: he was authorized to sell the minor's property; instead he executed a contract with a right of redemption.

"Usual Security Clauses", 8 Tulane L. Rev. 438–40, criticizing adversely *Gumpert* v. *Signal,* 152 So. 403. Yet each case of this nature must be decided on its own facts. And from the facts herein, it is enough for us to say that we need not decide in this case whether we would go so far as the court did in *United States* v. *524.72 Acres of Land.*

Our approach to the problem herein can perhaps be stated by quoting from *Scottish-American Mortgage Co., Ltd.* v. *Ogden et al.,* 21 So. 116 (La., 1896) where the court said at p. 118: "Tutors, when they contract in pursuance of deliberations of a family meeting, must confine themselves within the clear and well-defined instructions given. The contract gets its binding force from the family meeting. Any departure from the recommendation *inflicting the least injury upon the minors, or waiving any right that they may have,* is as though it had never been entered into, . . ." (Italics ours.)

We used similar language in *Costa* v. *Piazza,* 51 P. R. R. 667, where we pointed out at pp. 676–7: "It is evident that the fundamental purpose of the judicial authorization—the acquisition of José's undivided interest for the benefit of the other five co-owners—was fulfilled. From the facts proved it does not appear that there was an intention on the part of the mortgage creditor to defraud the minors. The rights and interest of the minors have not been in the least injured by the loan transacted in the manner in which this one was carried out. . . . Since the legal purpose of the transaction was attained, a variance existing in the means used to effect it, in the absence of fraud or confabulation, chargeable to the creditor, is in our opinion insufficient to serve as basis for a declaration of nullity of the first mortgage. . . ."

The argument might therefore be made here that the mortgage deed contained only conditions which are usual and customary in the type of transaction involved; that no discernible injury was thereby caused the minors; and that the

fundamental purpose of the authorization was carried out without any imputation of fraud or deceit. We need not decide whether that argument would prevail in all cases. Here we hold only that several additional factors are decisive against the claim of nullity. The first is that the prior mortgages, which were about to be foreclosed and were satisfied by the loan herein, contained provisions for costs, expenses, and attorney's fees; and at least one of them bore 12 per cent interest.[6]

The second additional factor which weighs heavily here is that the mortgagor was an insane veteran who was as much entitled to the protection of the court as the appellants; and his tutor contemporaneously obtained the approval of the same district court to make the loan herein with a specific provision in the order for 12 per cent interest.[7]

We deem it desirable to emphasize once more that this case involves a special situation, and that we are by no means relaxing the strict requirements of § 614 of the Code of Civil Procedure, including the requirements of paragraphs 6–9 thereof that the petition of the tutor must recite the nature and specific conditions of contracts and other transactions to be entered into on behalf of a minor or an incapacitated person.

The judgment of the district court will be affirmed.

---

[6] This rate of interest was permitted when the mortgage herein was executed. See Act No. 5, Laws of Puerto Rico, 1933, Special Session.

[7] The appellants, citing *Lókpez* v. *Fernández*, 61 P.R.R. 503, press on us as a ground for nullity herein that the district attorney did not appear personally at the hearing for judicial authorization. But, although we criticized that practice, we did not hold in the *Lókpez* case that this defect standing alone renders such an order null.