ROGERS, Justice.
 

 On March 2,1923, Solomon Signal, who was married to Mary Lazard, mortgaged for $463 a piece of real estate belonging to the matrimonial community. Signal died intestate on September 20, 1923, leaving his widow, Mary Lazard Signal, and six children, five of whom were minors. Mrs. Signal opened the succession of her deceased husband and qualified as natural tutrix of her minor children. The entire estate, consisting of community property, was appraised in the inventory at $1,300, and the minors’ general mortgage against their tutrix was recorded on that appraisement. On February 24, 1926, the mortgagee foreclosed his mortgage via executiva, and the demand for payment and notice of seizure were served on the proper parties. In this situation, Mrs. Signal, in her own behalf and on behalf of her minor children, filed a petition in the mortua-ry proceeding, setting forth that the property owned in indivisión by her and her children was about to be sold under executory process; that she was unable to pay the long past Sue mortgage debt, but she had an opportunity of obtaining a new loan secured by mortgage for an amount sufficient to discharge the debt, and it was to the interest of her minor co-owners she be allowed to mortgage the common property for that purpose. The undertutor acquiesced in the petition and recommended petitioner’s prayer be granted, dispensing with the advice of a family meeting as provided by Act No. 110 of 1920, which was in force at the time. On the petition, the court entered the following order, viz.;
 

 “It is ordered by the court that the recommendation of the natural tutrix and the concurrence thereto of the undertutor of the minors, be and the same are hereby approved and homologated; and, accordingly, let the petitioner, Mrs. Mary Lazard, widow of Solomon Signal, natural tutrix of the said minors, be authorized and she be hereby empowered to mortgage the property owned by the minors herein and described in the foregoing petition, said mortgage, to be in the sum of Seven Hundred Fifty Hollars ($750.00) and bearing eight per cent. 8%, interest from date until paid, with all usual security clauses.”
 

 “And it is further ordered that the general mortgage in favor of the said minors, recorded in M. O. B. 1258, Folio 224 of the Parish of Orleans, be ineffective insofar as the mortgage herein being authorized by the court.”
 

 On the court’s order, under date of April 7, 1926, George R. Gumpert lent the natural tutrix $750 on a new mortgage containing the usual clauses, including the pact de non alienando and waiver of appraisement. The mortgage was duly recorded. The funds realized from the loan were used to liquidate
 
 *64
 
 the prior mortgage, which was canceled on the mortgage records. The Gumpert mortgage was not discharged, and the mortgagee was compelled to pay the taxes assessed against the mortgaged property. Therefore, on October 25, 1932, Mr. Gumpert foreclosed his mortgage,- and the mortgaged property was seized and adjudicated to him for $100, which amount, as well as all fees and costs, he deposited with the civil sheriff.
 

 The general mortgage in favor of the Signal minors appeared on the mortgage certificate obtained by the civil sheriff, and he ruled the minors into court, through their natural tutrix, to show cause why their general mortgage should not be canceled so far as it affected the property sold by him and their rights referred to the proceeds of the sale. The tutrix interposed no defense to the rule, but the recorder of mortgages for the parish of Orleans, who was made a party to the proceeding, joined issue with the mover, contending that the tutrix, undertutor, and judge of the district court were not authorized to waive the benefit of appraisement in granting the mortgage to Mr. Gumpert; that their attempt to subordinate the minors’ general mortgage to the conventional mortgage was without effect; and that, if the representatives of the minors were authorized legally to partially cancel the-minors’ general mortgage, the tutrix in granting the Gumpert mortgage exceeded her powers as set forth in the order of court authorizing the mortgage.
 

 The judgment of the civil district court was against the recorder of mortgages, and he appealed to the Court of Appeal for the parish of Orleans, which on
 
 the
 
 original hearing reversed the judgment. But on rehearing the Court of Appeal set aside its- former decree and reinstated the judgment of the district court. The case is before us on a writ of review.
 

 The first question raised by the recorder of mortgages in his defense to the civil sheriff’s rule finds its answer in the case of Martin v. Lake, 37 La. Ann. 763, where this court held, as shown by the syllabus, that; “Article 342 of the Civil Code, which prohibits the sale of a minor’s property for less than its appraised value mentioned in the inventory, applies only to sales provoked by his tutor, during the course of his administration, and not to sales under execution, either of judgments, or by executory process for the foreclosure of a mortgage executed by the tutor with the authorization of a competent court, under the advice of a family meeting.” And a family meeting may now be dispensed with under the provisions of Act No. 319 of 1926, amending Act No. 110 of 1920. “In such a mortgage it is competent in law for the tutor to waive the benefit of appraisement in case of execution, and to agree to pay attorney’s fees in case of suit for collection.”
 

 The second question raised by the recorder of mortgages to the rule of the civil sheriff does not appear to involve the validity of the Gumpert mortgage. The question, as we understand it, addresses itself solely to the ranking of that mortgage as against the minors’ general mortgage. The recorder of mortgages contends the general mortgage enjoys priority over the conventional mortgage, because there are only two ways in which a minor’s general mortgage can be released: namely, by the substitution of a special mortgage, or by furnishing a tutor’s bond.
 

 
 *66
 
 There can be no question it has been held that the release of the minor’s mortgage to permit the sale of property for the minor’s necessities is not permissible. Lyman v. Stroudbach, 47 La. Ann. 71, 16 So. 662; Barton v. Hickson, 134 La. 278, 63 So. 902, and cases therein cited. But, on the other hand, this court has expressly approved, the subordination of the minor’s. general mortgage to a conventional mortgage where it was absolutely necessary to do so in order to protect the minor’s interest. Fontenette v. Veazey, 1 La. Ann. 236; Beauregard v. Leveau, 30 La. Ann. 302; Life Association of America v. Hall, 33 La. Ann. 49.
 

 In Eontenette v. Veazey, the court sanctioned the sale of the property of an impecunious tutrix free of the minors’ mortgage, in order to raise the funds necessary to repair the house in which she resided with her minor children.
 

 In Fleetwood v. Bordis, 19 La. Ann. 55, the court held that the only method provided by law for the cancellation of a minor’s mortgage was by substituting a special mortgage therefor. The court stated that Fontenette v. Veazey, to which its attention was directed, was an exceptional case not 'applicable to cases of ordinary occurrence.
 

 But in Beauregard v. Leveau, the minor’s mortgage was permitted to be postponed in favor of a loan secured by- mortgage, to provide for the maintenance and education of the minor, and the minor, having had the benefit of the money borrowed, was at his majority held estopped from interfering with, the property rights acquired under the first mortgage and derived from its foreclosure. It was contended in the case that the ruling in Eontenette v. Veazey had been overruled by the decision in Fleetwood' v. Bordis, but the court said: “If so it (Fleetwood v. Bordis) is itself overruled.”
 

 Life Association v. Hall, which is one of the cases cited in Barton v. Hickson, supra, is a leading case on the subject of the eancéllation of the minor’s mortgage resting on the tutor’s share of property held in common with the minor. There the court held, where suoli property is sold to effect a partition, no1 law authorized the referring of the minor’s mortgage to the proceeds; that the mortgage-remained attached to the undivided interest of the tutor until it was removed by a special mortgage or extinguished by a settlement of the minor’s rights at majority. This rule was-, subsequently modified in Koehl v. Solari, 47 La. Ann. 890, 17 So. 464.
 

 Notwithstanding the drastic rule which it announced in Life Association v. Hall, the court declared in that case, after reviewing Fontenette v. Veazey, Beauregard v. Leveau and Fleetwood v. Bordis, there was no reason why the precedents established in the first two cases should not be followed in similar cases under the vigilant eye of the court. After impliedly, if not expressly, approving the overruling in Beauregard v. Leveau of the ruling in Fleetwood v. Bordis, the court, at page 54 of its opinion in 33 La. Ann., said: “It must be-confessed, that the rulings of the court in those cases (Fontenette v. Veazie and Beauregard v. Leveau), practically amounts to judicial legislation; but, in justification, it must be;saidthat they were 'made in cases of the greatest urgency, on the hypothec sis that the property of the tutor, could with his consent, be dealt with, as,.though it, bq
 
 *68
 
 longed to the minors themselves. No legislation has intervened to modify these rulings, which in view of the extreme cases in which they were made, are entitled to respect, particularly as they were made in cases in which the minors had been materially Benefited. There is no reason why the precedents established in those cases, should not be followed now, in similar instances, under the vigilant eye of the Court entrusted with the protection of minors and of their rights.”
 

 Boudreaux v. Lower Terrebonne Ref. & Mfg. Co., 127 La. 98, 53 So. 456, was another case which, among other issues, involved the question of whether the minors’ mortgage could be subordinated to other mortgages granted by the tutrix. Although the question was not expressly decided, and the relief sought was granted on other grounds, the court clearly intimated that such subordination could be made if the minors were properly represented.
 

 The rule announced in Fontenette v. Veazey and Beauregard v. Leveau, as approved in Life Association v. Hall, is peculiarly appropriate to the facts of this case. The mortgage indebtedness to Gumpert was incurred under the spur of necessity and for the obvious advantage of the minors. As the direct result of - that transaction, the home was saved to the family, and the minors were maintained therein for more than six years. The tutrix and her minor children have received the benefit of Gumpert’s money, and it would be wholly inequitable to deprive him of the security specially furnished to ensure its return.
 

 Counsel for the recorder of mortgages contends the present case is governed by the case of In re Oliphant, 132 La. 479, 61 So. 533. But the cited case and the instant cases are not parallel cases. There the cancellation of the mortgage was sought in the interest of the tutrix. Here the subordination of the minors’ mortgage was effected for the benefit of the minors. The rule of the cited case is that the minors’ mortgage cannot be canceled to permit the tutrix to sell her property for the purpose of discharging a paving lien and a conventional mortgage. The question in the instant case is whether in a proper case the minors’ mortgage may be subordinated to a conventional mortgage. We think there is a clear legal distinction between candeling the minor’s mortgage for the benefit of the tutrix and subordinating the minor’s mortgage for the advantage of the minors. The cancellation can be effected only by the execution of a special mortgage or upon the furnishing of a bond, whereas the subordination may be accomplished by appropriate proceedings.
 

 The third question raised by the recorder of mortgages to the rule of the civil sheriff relates to the authority conferred upon the tutrix by the order of court authorizing the execution of the conventional mortgage. We think the question was correctly disposed of by the Court of Appeal as follows, viz.:
 

 “Did the tutrix, in granting the conventional mortgage in favor of Mr. Gumpert go beyond the recommendations of the tutrix and undertutor as contained in the petition and exceed the express authority contained in the order of the district judge? It is said that neither the petition nor the order of the court specifically authorized placing in the mortgage the pact non alienando, confession of
 
 *70
 
 judgment and waiver of appraisement clauses. It is true that the language of the petition and the order of court do not refer to these clauses by name, but both the petition and order do set forth that the loan of $750 is to be secured by a mortgage containing ‘all security clauses.’ ”
 

 “It seems to us' that the clauses with reference to the pact de non alienando confession of judgment and waiver of appraisement are so generally used in conventional mortgages that the courts can take judicial notice of those three clauses ‘as usual security clauses.’ ”
 

 We approve the statement contained in the concurring opinion, “that the words ‘usual security clauses’ are sufficiently clear and sufficiently broad to authorize the mortgage in the form in which it was executed, particularly since the former act of mortgage, which was being substituted and which contained clauses identical with those which are embodied in the act involved here, might have been resorted to for explanation of the meaning of the term ‘usual security clauses,’ if explanation was necessary and if that term could be said to be ambiguous.”
 

 In Thompson v. Gosserand, 131 La. 1056, 60 So. 682, 685, it was declared, “the court will take' notice of prevailing customs.” And undoubtedly the prevailing custom in the execution of conventional mortgages in this state is to include therein the pact de non alienando, confession of judgment, and waiver of appraisement, which we think may be fairly considered as embraced within the term “usual security clauses.”
 

 Counsel for the recorder of mortgages cites the case of Kling Mortgage Inv. Co. v. Donovan, 178 La. 119, 150 So. 850. That case, in our opinion, is not appropriate to the issue involved here. There the curator clearly exceeded his powers as set forth in the order of court. Here the tutrix has acted within the scope of her authority as defined by the order of court.
 

 The recorder of mortgages contends, finally, that the minors’ mortgage cannot be subordinated to Gumpert’s mortgage, because there was no recommendation to that effect by the tutrix, and conseqüently, no concurrence therein by the undertutor. The contention is untenable. Taken as a whole, the proceedings leading up to the execution of the mortgage were properly conducted by the tutrix with the full concurrence of the undertutor.
 

 Dor the reasons assigned, the. judgment of the Court of Appeal is affirmed.
 

 ODOM, J., dissents.