SARTAIN, Judge.
This appeal arises from the judgment of the trial court rendered adverse to appellant, Guaranty Savings Assurance Company. The other two defendants, University Lake Corporation, a domestic corporation, and International Speedways, Inc., a North Carolina corporation, against whom judgment by default was confirmed, have not appealed. The judgments rendered against the two latter named parties are now definitive.
Our perusal of the record, the authorities relied on by the trial court and its reasons for judgment convinces us that the judgment appealed is correct, and accordingly, the judgment is affirmed.
We adopt as our own the well reasoned written opinion of the trial judge and quote it in full, as follows:
“This is an action to enforce a mortgage by ordinary process.
“The plaintiff is the executor of the Succession of Seymour Weiss.
“The defendants are three corporations, namely:
(1) University Lake Corporation (Lake), a Louisiana business corporation which entered into a loan transaction with the American Bank and Trust Company of Baton Rouge on October 22, 1963. The loan in question was secured by a collateral mortgage on property described in detail in P-1.
(2) International Speedways, Inc. (Speedways), a North Carolina business corporation which acquired ownership of said property burdened with said collateral mortgage on December 29, 1970, from Lake’s successor in title.
(3) Guaranty Savings Assurance Company (GSA), a Louisiana business corporation which acquired the property from Speedways on June 15, 1971, ‘assuming, binding, and obligating itself, its successors and assigns to pay all mortgages, judgments, and valid liens now extant against the property-’
“Plaintiff seeks a money judgment against all three corporate defendants, in solido, for $132,000.00 plus 6% interest, subject to credits for interest payments made, plus 10% attorney’s fees. Plaintiff also asks that the mortgage be recognized and maintained against the property.
*1110 “Service of process was made on Lake’s designated agent, P. D. V. de LaBarre on November 25, 1974. Lake filed an answer on December 10, 1974, appearing through ‘M. R. Fletcher, President in Proper Person.’ Lake was not represented in the case; its address is not known to the court, and no further appearance has been made on its behalf.
“Speedways was served under the Long Arm Statute. It made no appearance and a preliminary default was entered against it. The evidence on trial was offered by plaintiff in confirmation of said default. Under the Long Arm Statute, any judgment against Speedways will be ‘in rem.’
“The principal dispute is between the plaintiff and GSA, the present record owner of said property.
“PACTS
“Lake owned a 15.19-acre tract of land in East Baton Rouge Parish and wanted to develop it into a residential subdivision. Its plan of development called for eighteen equal-sized lots fronting on a single street and backing up to two man-made lakes. It applied on September 26, 1963, to the American Bank for a loan of $144,000.00, representing that it owned eighteen lots in Twin Lake Subdivision and had a contract for construction of all of the offsite improvements, including streets, lakes, water and sewerage system.
“The loan was consummated on October 22, 1963. Pursuant thereto, a $144,000.00 ‘hand note’ was executed with Lake as Maker. The hand note was secured by the pledge of a $144,000.00 note which was par-aphed ‘Ne Varietur’ with an act of collateral mortgage on said tract (P-1).
“A ‘Pledge of Proceeds of Contracts’ was also executed covering the eighteen contracts to purchase the lots of the proposed Twin Lake Subdivision. The parties disagree as to which of the two notes, the hand note or the ‘Ne Varietur’ note, was meant to be secured by this act of pledge.
“American Bank advanced Lake a total of $132,000.00. The original plan of development fell through and was replaced by an apartment complex plan. Lake defaulted on its obligation under the loan. The bank began to call on lake for payment and made its final demand on April 11, 1966. On June 24, 1966, American Bank sold the obligation represented by the hand note and all its accompanying security devices to Seymour Weiss for $133,848.00.
“After several conveyances to and from various parties, Speedways acquired the 15.-19-acre tract on December 29, 1970, from Town House Trace, Inc. In this transaction Speedways assumed all mortgages ‘extant’ against the property at that time.
“On June 15, 1971, GSA acquired the property from Speedways and assumed ‘all mortgages . . now extant against the property.’
“Suit was filed herein on November 15, 1974, for the $132,000.00 advanced under the hand note and for recognition of the mortgage.
“LAW
“GUARANTY SAVINGS ASSURANCE COMPANY
“I. GSA contends that when it assumed all mortgages extant against the property, it did not ‘acknowledge, assume, or agree to pay any debts, loans or obligations of others.’ In other words, it only assumed the mortgages, not the underlying debts and therefore cannot be liable to the plaintiff on the notes.
“The argument fails for two reasons:
 “First, it is evident that in using the word ‘mortgages’ in the act of sale, the parties intended that which is the ‘common and usual significance’ of the term, which was that GSA assumed the total obligation against the property, its debts and security. The words of a contract are to be interpreted according to their ‘common and usual signification’ and in an effort to ‘ascertain the common intention of the parties.’ Civil Code Articles 1946 and 1950. Only by the most strained interpretation could GSA be said to have assumed the security but not the debt.
*1111 “Second, the jurisprudence indicates that a person who assumes a mortgage becomes personally obligated and a co-debtor on the obligation secured by the mortgage. Simon v. McMeel, [167 La. 243,] 119 So. 35 (La.1928), was a suit for the balance due on a promissory note, with interest and attorney fees, and for the recognition and enforcement of the mortgage by which the note was secured. The defendant had bought the property burdened by the mortgage and as part of the purchase price, ‘assumed and obligated herself to pay all mortgages and encumbrances bearing upon the property.’ The court said that, ‘in assuming and binding herself to pay these obligations, the defendant became a codebt- or thereon with the original obligor.’ Federal Land Bank of New Orleans v. Cash, [Cook] et al., [179 La. 857,] 155 So. 249 (La.1934), was a suit to enforce a mortgage against the successors in title of the original mortgagor. The court first noted that, ‘Each of the purchasers expressly assumed and agreed to pay the mortgage in favor of the Federal Land Bank.’ The court then held that, ‘A vendee who assumes and binds himself to pay mortgages or obligations placed on the property by his vendor thereby becomes a co-debtor with the original obligor.’
 “II. GSA contends that the hand note is prescribed. The argument is without merit because the ‘Ne Varietur’ note was pledged to secure the hand note pursuant to authority granted to F. D. V. de LaBarre by resolution of Lake. Prescription does not run against an obligation during the existence of a pledge to secure such obligation. Scott v. Corkern, 231 La. 368, 91 So.2d 569; Succ. of Picard, 238 La. 455, 115 So. 2d 817; Reconstruction Finance Corp. v. Holloway, 191 La. 35, [583] 186 So. 35.
“GSA further contends that the principle that a pledge constantly interrupts prescription is without application in this case because the ‘Ne Varietur’ note is prescribed itself, and therefore, valueless. However, even if it were correct that the ‘Ne Varietur’ note had prescribed, it would make no difference insofar as the interruption of prescription of the hand note is concerned. The Supreme Court faced precisely this question in Succ. of Picard, supra., and held:
‘It is not the detention of a thing of value by the pledgee which serves as a constant acknowledgement of the debt and hence a constant renunciation of prescription. Regardless of the value of the thing pledged, the obligation of the pledgee to return the property continues. [. . . ] Under the well settled law the detention or possession is the factor which serves as a constant acknowledgement of the debt.’ *1112 mortgage note of even date and in like amount, paraphed for identification herewith.’ The eighteen contracts are listed. The pledge then provides that the $144,-000.00, ‘represented by the note hereinabove described was made in consideration of the promise and agreement of the said University Lake Corporation to pledge and/or assign unto American Bank and Trust Company the monies due and payable or hereafter to become due and payable to the said Lake under the hereinabove described contracts . . . and now, in order to secure said American Bank and Trust Company for the indebtedness aforesaid, as well as to secure the payment of any other obligation or liability direct or contingent, of said University Lake Corporation to said American Bank and Trust Company, now existing or hereafter arising, up to the sum of One Hundred Forty-Four Thousand and No/100 Dollars ($144,000.00).’ The pledge is then made of, ‘any and all sums due or owing to the said University Lake Corporation, or that may hereafter become due or owing to it under and by virtue of the contracts hereinabove described . . . ’
*1111 “Under the facts of this case, the hand note is virtually imprescriptible. See Nathan and Marshall, ‘The Collateral Mortgage,’ 33 La. Law Review 497, at 507.
“HI. GSA next contends that the ‘Ne Varietur’ note has prescribed. The plaintiff answers that this nóte is secured by the pledge of proceeds of the eighteen contracts to buy and sell lots in Twin Lake Subdivision; that the pledge is still in existence; that therefore, prescription has not run on the note. GSA responds: (1) the pledge of proceeds was meant to secure the hand note, not the ‘Ne Varietur’ note; (2) it was a pledge of the proceeds of the contracts, not of the contracts themselves, so that when the plan of development was changed and there were to be no proceeds from the contracts, the pledge was abrogated; and (3) because the pledge was not recorded, it cannot affect GSA since it is a third party under the Public Records Doctrine.
“111(A) The act of pledge in question is in authentic form. Attached to it are (1) the Resolution of Lake’s Board of Directors authorizing F. D. V. deLaBarre to enter into the pledge, and (2) the originals of the eighteen written contracts to ‘purchase and sell’ the lots.
“The pertinent language of the pledge first states that Lake, ‘is justly and truly indebted unto American Bank in the full and true sum of One Hundred Forty-Four Thousand and No/100 Dollars ($144,000.00), and represented by one (1) certain collateral
*1112 “Lake’s corporate resolution authorizes M. R. Fletcher or F. D. V. de LaBarre to enter into the pledge, ‘as additional security for the loan.’ (emphasis supplied)
“The court is convinced that the pledge was intended to secure, and does secure, the ‘Ne Varietur’ note.
“Both notes are demand instruments made payable to the order of ‘Itself’ by Lake as maker. Both are for $144,000.00, the ‘Ne Varietur’ note calling for 8% interest and the hand note calling for 6%.
“At the outset, the pledge states that it is to secure the obligation represented by the collateral mortgage note, ‘paraphed for identification herewith.’ The language is inartfully drafted in that the ‘Ne Varietur’ note is paraphed for identification with the collateral mortgage, but the intent is clear. The hand note is not paraphed at all. The reference is to the ‘Ne Varietur’ note.
“It is correct that the evidence of the debt is the hand note, not the ‘Ne Varietur’ note. It is also correct that both the act of pledge and the corporate resolution state that the pledge is to secure the, ‘indebtedness aforesaid’ or the ‘loan.’ However, all such references relate back to a debt represented by, ‘the note hereinabove described,’ which is the ‘Ne Varietur’ collateral mortgage note. The pledge also states that it is to secure, in addition to the ‘indebtedness aforesaid,’ ‘any other obligation or liability,’ of Lake to American Bank, ‘now existing or hereafter arising, up to,’ $144,000.00. This language indicates that the parties were dealing with a collateral mortgage ‘Ne Var-ietur’ note. A hand note represents a specific debt only, but the purpose of the collateral mortgage security device is to, ‘create a mortgage note that can be pledged as collateral security for either a pre-existing debt, or for a debt created contemporaneously with the mortgage, or for a future debt or debts, or even for a series of debts,’ up to a maximum amount. (Nathan and Marshall, supra., at 498.)
“Though the language of the act of pledge is not as carefully drafted as it should be in light of the complex nature of the collateral mortgage security device, it is clear that the parties intended the pledge to secure the ‘Ne Varietur’ note.
“111(B) The essence of GSA’s next contention is that the fact that the plaintiff still holds the act of pledge and the eighteen contracts does not act as an interruption of prescription on the note because the pledge was not of the contracts themselves, but of monies due under the contract. When the plan of development was changed, there were to be no proceeds; therefore, the pledge was abrogated.
“The question is whether or not a pledge of the proceeds of contracts includes a pledge of the written evidence of the contracts.
“Succession of Bier, 145 La. 722, 82 So. 868 (1919) provides guidance. The case was an action denying the existence of a pledge.
“The pledge in Bier was of, ‘all my rights, title, interest, and equity in and to the following mortgaged notes . . ..’ The pledge at hand is of the, ‘proceeds of con *1113 tracts,’ ‘monies due and Payable,’ and ‘any and all sums’ due under the contracts.
“A contention in that case was that, ‘by this document the note itself is not purported to be pledged, but only the equity of the pledgor in the note.’ The contention in this case is that the contracts were not pledged, only their proceeds.
“The court in Bier held: ‘To say that this .owner of the note owns the equity in the note or an equity in it, is merely a form of expression devoid of legal significance . When, therefore, Bier executed said document, he pledged the thing he had, and the thing he had was the note.’
“A similar holding here is that when Lake pledged its interest as creditor of the contracts, it pledged what it had and what it had was the written contracts.
“The pledge of the proceeds herein included the pledge of the contracts themselves. The fact that the contracts are valueless in light of the changed plan of development makes no difference insofar as interruption of prescription through the continued existence of the pledge is concerned. Succ. of Picard, supra.
“111(C). Finally, GSA contends that the pledge can have no effect against it because the pledge was not recorded; that it is a third party, and all documents affecting immovable property must be recorded to have effect against third parties under the Public Records Doctrine. Civil Code Article 3342; McDuffie v. Walker, 125 La. 152, 51 So. 100 (1909).
“The argument fails for two reasons:
(1) GSA is not a third party for purposes of the Public Records Doctrine; and
(2) GSA assumed all encumbrances extant against the property, not just all those indicated by the public records.
“In Hite, et al. v. Charbonnet, 193 La. 581, 192 So. 64 (1939), the Supreme Court held that a person who assumed a mortgage became personally bound for the debt, the same as the original mortgagor, ‘and a party to the mortgage within the meaning and contemplation of the provisions of the Revised Civil Code, and that neither the inscription of the mortgage nor its reinscription was necessary to preserve the same as to him.’
“If a person who assumes a mortgage becomes a party to the mortgage such that neither inscription nor reinscription of the mortgage is necessary to preserve the mortgage as to him, then a person who assumes a collateral mortgage likewise becomes a party to the mortgage such that the recordation of a written pledge done to further secure the collateral mortgage note, as part of the total collateral mortgage security package, is not necessary to affect him.
“Further, when GSA acquired the property it assumed all ‘mortgages, judgments and valid liens now extant against the property.’ Counsel for GSA has indicated in brief that the term ‘mortgages now extant’ means those legally existing and attaching to the property on that date. The court reads this assumption to be broader than all such encumbrances against the property indicated by the public records. GSA assumed everything, not just those things shown by the public records. This act of assumption was tantamount to a waiver of any protection afforded by the Public Records Doctrine.
“IV. GSA also contends that because the attempted reinscription of the collateral mortgage to preserve its efficacy against third parties was defective, the mortgage cannot affect GSA.
“For the reasons noted above, this contention is without merit. Hite, et a 1. v. Charbonnet, supra.
“For all of the above reasons, plaintiff is entitled to judgment as prayed for against GSA.
U * * * >>
In supplemental briefs, appellant advances further argument.
Appellant argues that it has the right to attack the Lake mortgage, citing C.C.P. Articles 2701, 2702 and 2703. It argues that these articles are consistent with *1114 the right of a subsequent transferee, such as GSA, to attack the mortgage given by Lake. GSA relies on the early case of Deloney v. George, 20 La.Ann. 216 (1868).
The Deloney case as well as the Code of Civil Procedure articles cited are clearly distinguished from the instant case. C.C.P. Articles 2701, et seq., are applicable to exec-utory process whereas the instant suit is an ordinary proceeding. The most clearly distinguishing fact is that GSA expressly assumed the payment of the note for which the mortgage was given as security and any lack of inscription or reinscription cannot be taken advantage of by GSA, and as we hold supra prescription has not run against the Lake note because of the extant pledge.
In the Deloney case relied on by GSA there was no assumption of the encumbrance, thus as Deloney was a third party to the encumbrance by the original vendee, inscription of the mortgage ceased at the end of ten years within which a reinscription should have been made.
Further, appellant cites First Guaranty Bank v. Alford, 366 So.2d 1299 (La.1978) to support its argument that the mere retention of the 18 contracts does not determine the continued existence of the pledge. The Alford case is inapposite to the facts of the instant case and has no application herein.
We find no factual basis for concluding that the contract of pledge was unilaterally terminated by the pledgee or mutually terminated by the parties.
The judgment appealed is affirmed at appellant’s cost.
AFFIRMED.