WATKINS, Judge.
This is an action for a declaratory judgment to interpret a provision of a lease and for damages for alleged breach of the lease. From a judgment favorable to plaintiffs which interpreted the lease to require defendants to execute a “commercially feasible mortgage” and which awarded plaintiffs $147,010.00 in damages, defendants have appealed. We reverse.
On April 29, 1968, defendants leased unimproved immovable property on Acadian Thruway in Baton Rouge to Joseph H. Ka-vanaugh and Bilwood Smith. Smith’s interest has since been assigned to Robert B. Tudor, Jr., plaintiff with Kavanaugh. Two of the lessors were minors at the time the lease was executed and a court order was obtained in the Parish of East Baton Rouge authorizing their natural tutrix, Lois Brier Mayer, to execute the lease on the minors’ behalf, and naming Marian Mayer Berkett attorney-in-fact for Lois Brier Mayer in executing “all documents and papers necessary to effect the lease and the option to lease”. That court order was dated January 12, 1968.
Several tracts in the lease were developed without plaintiffs (lessees) calling upon defendants (lessors) to execute a mortgage under the terms of the contract of lease. Then a series of negotiations began that culminated in the present suit. On October 16,1975, a permanent loan commitment was obtained by plaintiffs from the Savings Life Insurance Company of Shreveport, Louisiana, for development of an additional tract in the lease, which required the obtaining of a mortgage from the lessors. These documents were submitted to Mrs. Berkett, attorney for lessors. On November 10, 1975, plaintiffs obtained a construction loan commitment from Louisiana National Bank of Baton Rouge, which required lessors to mortgage the property in question. Negotiations were conducted with the lessors, which resulted in lessors making various counter-proposals regarding the terms of the mortgage. On February 22, 1978, plaintiffs submitted to defendants (lessors), through Mrs. Berkett, a mortgage to obtain permanent financing from Savings Life Insurance Company. The plaintiffs (lessees) called upon defendants (lessors) to execute the mortgage pursuant to the contract of lease dated April 29, 1968, particularly the provisions of Article Ninth thereof. This mortgage contained a confession of judgment and a waiver of notice and appraisement. On March 16, 1978, Mrs. Berkett sent plaintiffs a letter refusing to execute the mortgage in question. In addition to seeking specific performance mandating defendants to sign the mortgage, plaintiffs allege that they suffered a loss of commitment costs in the sum of $20,597.50, and other damages. Plaintiffs also pray “for a declaratory judgment interpreting the lease as requiring defendants to allow a commercially acceptable in rem mortgage to be placed upon the property if such a mortgage is submitted to them (defendants)
The central question concerns an interpretation of provision Ninth (B) of the lease instrument, and more particularly the issue of whether or not lessors by virtue of the terms of the lease were obligated to execute a mortgage containing a confession of judgment and a waiver of notice and appraisement.
*1272 The lease (in provision Ninth (B)) requires the lessors in the future to execute a “mortgage” for improvements. To put the question in focus, we quote from provision Ninth of the lease the pertinent provisions:
“(A) LESSEE shall not place any mortgage, lien, privilege or encumbrance on or against the leased property or permit any of its creditors to do so without LESSOR’S prior written consent.
“(B) Upon request and during the primary term (first twenty years) of this lease, LESSOR agrees to permit LESSEE to mortgage the leased property or a portion thereof for the purposes of providing initial interim or initial permanent financing of the cost of physical improvements placed or to be placed on the property covered by the mortgage, provided the LESSEE first satisfies the following terms and conditions:
“1-The mortgage shall involve and shall require no personal or direct obligation on the part of the LESSOR and shall bear only against LESSOR’S land and more specifically, against that portion of the leased property specifically mortgaged.”
As we have stated, the mortgage that lessors refused to sign contained a confession of judgment and waiver of notice and appraisement. In Scottish-American Mortgage Co. v. Ogden, 49 La.Ann. 8, 21 So. 116 (1896), the question arose as to the binding effect of a waiver of appraisement in an act of mortgage executed on behalf of minors wherein the tutor was simply authorized to execute a “mortgage”, which was all the lessors were required to sign in the present case. The minors were of age at the time the mortgage was sought to be enforced. The Court stated:
“Tutors, when they contract in pursuance of deliberations of a family meeting, must confine themselves within the clear and well-defined instructions given. The contract gets its binding force from the family meeting. Any departure from the recommendation inflicting the least injury upon the minors, or waiving any right they may have, is as though it had never been entered into, and is of no effect. The family meeting did not recommend a sale without benefit of ap-praisement. This stipulation in the mortgage is null and void. That the minors, or some of them, have since attained majority, and made no objection, until proceedings were instituted against them, cannot have the effect of making this stipulation valid. It was such an agreement, not authorized, and never entered into by them, that they could resist its attempted enforcement at any time.” (21 So. 116, 118)
Relying upon Scottish-American, the Louisiana Supreme Court held in Kling Mortgage Investment Co. v. Donovan, 178 La. 119, 150 So. 850 (1933), that an order of court authorizing a curator of an interdict to execute a mortgage did not grant him the authority to execute a mortgage that contained a pact de non alienando, a confession of judgment, and a waiver of appraisement, and that these clauses in the mortgage were without effect. In a much more recent case, Hendry v. Nicolosi, 126 So.2d 71 (La.App. 1st Cir. 1961), it was held that a court order authorizing a tutrix to “execute all instruments necessary and incidental, including the encumbering of the property .” did not give the tutrix authority to confess judgment, waive appraisement, or sign a pact de non alienando.
Strahan v. Garis, 183 So.2d 392 (La.App. 4th Cir. 1966), writ refused 248 La. 1104, 184 So.2d 26 (1966), is the only case that we can find which might be considered in conflict with this jurisprudence. However, the authority granted in that case was much broader in terms. In that case, an authentic act of procuration or power of attorney gave the attorney-in-fact the power to execute a note and mortgage “on such other terms and conditions as Charles F. Villas, agent and attorney-in-fact shall deem fit and proper.” That language quite clearly clothed the agent with broad authority. The court, therefore, held that the agent had the power to confess judgment in the mortgage. The holding of this case cannot *1273 be said to upset the prior jurisprudence that the authority to execute a “mortgage” confers only the authority to execute a simple mortgage, without a confession of judgment or waiver of appraisement.
Part of the testimony of Gordon Pugh, attorney at law, Baton Rouge, indicates that in his opinion the provision of the lease requiring the lessors to mortgage was simply a contract to contract, and that it would be necessary to obtain an additional order on behalf of the minor lessors to mortgage the property. We do not wish to limit the right of minors in the future, by holding that it would not have been necessary to obtain an additional court order to execute an act of mortgage had the lessors who were minors at the time of the execution of the act of lease still been minors when they were presented with the act of mortgage. However, in the present case, valuable rights of the minors were surrendered in provision Ninth (B) of the lease. The surrender of rights can have been no broader than the specific surrender contained in the lease, the execution of which was authorized by court order. That surrender of rights bound the lessors to execute a simple mortgage, without a confession of judgment and a waiver of notice and appraisement. Quite clearly, that is the limit of the court order which in effect requires the minors to mortgage. The same instrument cannot have one meaning as to minors and another as to majors. We, therefore, hold that none of the lessors is required to execute a mortgage containing a confession of judgment or waiver of notice and appraisement.
As the jurisprudence is clear that authority to execute a “mortgage” where minors are involved confers only the authority to execute a simple mortgage not containing a waiver of notice, waiver of appraisement and confession of judgment, it is unnecessary to determine what is custom or usage with regard to the obligation vel non of a lessor to execute an act of mortgage containing those clauses, when he simply consents to “mortgage” in the lease instrument and none of the lessors is a minor, or to consider the degree to which appellants or appellees have established their opposing contentions with respect to the existence or non-existence of such custom.[1] We limit ourselves to holding simply that in the present case, because minors were involved, the execution of the lease instrument, on behalf of minors and by the majors, required only the execution of a simple mortgage by the lessors, one not containing a waiver of notice and appraisement and a confession of judgment.
Because we hold that lessors were not obligated to execute a mortgage containing a confession of judgment and waiver of notice and appraisement, lessors cannot be held liable in damages for failure to execute the act of mortgage in favor of Savings Life Insurance Company, which contains those clauses.
We hold further that plaintiffs’ prayer that “mortgage” be declared to mean “commercially feasible mortgage”, seeks a determination that would be in itself unclear if stated in those terms, or impossible for this Court to give, if it were stated with greater exactitude. It is a fundamental principle that a court may not rewrite the contract for the parties under the guise of construction. The mortgage contemplated by the parties could or could not contain numerous provisions which would be permissible under the contract of lease. This court does not feel that it is required or expected to spell out the terms of a prospective mortgage.
The judgment of the trial court holding that “mortgage” means “commercially feasible mortgage” and awarding $147,010.00 in damages is accordingly reversed, all costs *1274 in both courts to be borne by plaintiffs-ap-pellees.
REVERSED.

. Nor is it necessary for us to determine the effect of two cases cited by the trial court on custom in its reasons for judgment. Kaplan v. University Lake Corp., 369 So.2d 1107 (La.App. 1st Cir. 1979) and National Safe Corp. v. Benedict-Myrick, Inc., 371 So.2d 792 (La.1979). In addition, we might note, neither case involves the legal or factual situation here raised, as the first concerns the effect of an assumption of mortgage and the second an implied agreement not to compete.