407 So.2d 645 (1981)
Joseph H. KAVANAUGH, et al.
v.
Marian Mayer BERKETT, et al.
No. 80-C-1526.
Supreme Court of Louisiana.
June 22, 1981.
Order for Motion to Dismiss August 24, 1981.
John Dale Powers, Michael H. Rubin, of Sanders, Downing, Kean & Cazedessus, Baton Rouge, for plaintiff-applicant.
Ralph I. Kaskell, Jr., of Deutsch, Kerrigan & Stiles, New Orleans, for defendant-respondent.
MARCUS, Justice.
In 1967, Joseph H. Kavanaugh and Bilwood Smith began negotiating with Mrs. Marian Mayer Berkett to lease a certain thirteen-acre tract of unimproved land fronting on the South Acadian Thruway adjacent to Interstate-10 in East Baton Rouge Parish. Mrs. Berkett, a New Orleans attorney, owned the land with other members of her family, namely, Maurice J. Mayer, Jr., Rhea Mayer Cohn and Lois Brier Mayer and her two minor children, Charles Denis Mayer and Margaret Mayer. Mrs. Berkett prepared the lease in which the lessors agreed to permit the lessees "to mortgage" the leased property for the financing of the physical improvements placed on the property provided the mortgage required no personal liability on the part of the lessors and the lessees deposited with an escrow agent a certain amount of government bonds as security. On January 12, 1968, Lois Brier Mayer, natural tutrix of her minor children, obtained a court order authorizing her to lease the minors' interest in said property under the terms and conditions set forth in the attached lease and naming Mrs. Berkett as her agent-in-fact with authority to execute "all documents and papers necessary to effect the lease." The lease was signed on April 29, 1968. Bilwood Smith's interest was subsequently assigned to Robert B. Tudor, Jr.
Shell and Gulf service stations and a Sambo's restaurant were constructed on the property without the need of a mortgage; however, the financing for the construction of a Smuggler's Inn restaurant required the mortgage of the land for the proposed restaurant. A series of negotiations between lessees and Mrs. Berkett were held to formulate a mortgage that would satisfy both Mrs. Berkett and the lender. A stalemate was reached as Mrs. Berkett made it clear that the lessors would not execute any mortgage containing a confession of judgment and waiver of notice and appraisement.
Lessees then brought this action against lessors seeking a declaratory judgment interpreting the lease to require the lessors to sign a "commercially acceptable in rem mortgage" on the leased property and specifically to require them to sign the mortgage submitted by lessees "under the Savings Life Insurance Company commitment." Lessees further prayed for damages for anticipatory breach of the contract. At trial, it was established that after much delay caused by the lessors' refusal to sign a mortgage in favor of Savings Life Insurance Company to finance construction of the Smuggler's Inn, the lessees obtained financing through another lender under more onerous terms. The lessors had refused to sign the mortgage because it contained a confession of judgment and waiver of notice and appraisement.
The trial judge rendered judgment in favor of lessees and against the lessors, interpreting the words "to mortgage" as set forth in the lease agreement to mean a "commercially feasible mortgage" and awarding damages in the amount of $147,000 for the lessors' failure to execute such a mortgage. Lessors appealed.
The court of appeal reversed, holding that because minors were involved, the execution of the lease, on behalf of the minors and by the majors, required only the execution *646 of a "simple mortgage" by the lessors, that is, one not containing a confession of judgment and waiver of notice and appraisement. Therefore, since the lessors were not obligated to execute a mortgage containing a confession of judgment and waiver of notice and appraisement, lessors could not be held liable in damages for failure to execute the mortgage in favor of Savings Life Insurance Company which contained those clauses.[1] On lessees' application, we granted certiorari to review the correctness of that decision.[2]
The ninth article of the lease stated in pertinent part:
(A) LESSEE shall not place any mortgage, lien, privilege, or encumbrance on or against the leased property or permit any of its creditors to do so without LESSOR's prior written consent.
(B) Upon request and during the primary term (first twenty years) of this lease, LESSOR agrees to permit LESSEE to mortgage the leased property or a portion thereof for the purpose of providing initial interim or initial permanent financing of the cost of physical improvements placed or to be placed on the property covered by the mortgage, provided the LESSEE first satisfies the following terms and conditions:
1The mortgage shall involve and shall require no personal or direct obligation on the part of the LESSOR and shall bear only against LESSOR's land and more specifically, against that portion of the leased property specifically mortgaged.
2Before any mortgage is placed on any of the leased property for initial interim or initial permanent financing for the purposes described above, LESSEE shall deposit with an escrow agent, fulfilling the requirements set forth in Subparagraph 3 of this Article, negotiable United States Bonds having a market value at the time of the deposit in escrow equal to or in excess of an amount referred to in this lease as the Security Amount, and the Security Amount shall be determined in the following manner:....
Although the lessors' prior written consent is needed before the lessees can place a mortgage on the property in question, the lease requires the lessors to permit the lessees "to mortgage" the leased property for financing the cost of physical improvements placed on the property provided the mortgage is an in rem mortgage, that is, one that bears only against that portion of lessors' land specifically mortgaged and involves no personal obligation on the part of the lessors, and the lessees deposit with an escrow agent a certain amount of government bonds as security.
Lessees contend the term "to mortgage" as used in this lease means a "commercially acceptable in rem mortgage" whereas lessors contend the term means only a "simple mortgage," that is, one not requiring a confession of judgment and waiver of notice and appraisement. Therein lies the controversy.
Joseph H. Kavanaugh testified that the sole purpose he and Bilwood Smith leased the property was to develop it commercially. To do this, it was necessary to be able to mortgage the property as security for loans. He stated that Mrs. Berkett was fully aware of their intended use of the property and knew the loans would be made by commercial lenders. Mrs. Berkett testified that she was aware that the property was going to be developed commercially but insisted that the right "to mortgage" given in the lease was intended to be very restrictive and that she had agreed only to permit a "simple mortgage" as provided by the civil code. Mr. Kavanaugh testified that they never would have signed the lease had Mrs. Berkett indicated that the lessors would not allow a mortgage containing a confession of judgment and waiver of notice and appraisement because only a mortgage containing those clauses would be acceptable to commercial lenders. Mrs. Berkett stated that she was never asked to confess *647 judgment or waive any rights. She further stated that she would never have allowed the lease to contain the words "commercially acceptable in rem mortgage" and did not "agree to give them whatever any lender would demand[,] ... give carte blanche [or] ... write out a blank check." Mr. Kavanaugh testified that Mrs. Berkett's actions, conversation and correspondence made it clear that she did not intend to allow a mortgage under any circumstances. He further stated that he had made arrangements with a bank to transfer a certificate of deposit into an escrow account immediately upon the execution of a mortgage.
Four attorneys were qualified by the court as experts in the field of real estate mortgages. All testified to the effect that commercial lenders require certain usual and customary clauses in mortgages, including a confession of judgment, pact de non alienando and waiver of appraisal, in order to permit executory process and that failure to include these clauses would render a mortgage unacceptable to them. They further testified that lawyers using the term "mortgage" consider it to include all the usual and customary security clauses, including a confession of judgment, pact de non alienando and waiver of appraisal.
Agreements legally entered into have the effect of laws on those who formed them and must be performed with good faith. La.Civ.Code art. 1901. Courts are bound to give legal effect to all such contracts according to the true intent of the parties. La.Civ.Code art. 1945. Terms of art or technical phrases are to be interpreted according to their received meaning with those who profess the art or profession to which they belong. La.Civ.Code art. 1947. All clauses of agreements are interpreted the one by the other, giving to each the sense that results from the entire act. La. Civ.Code art. 1955.
Applying these principles of interpretation to the lease in question, we conclude that the term "to mortgage" means a mortgage containing the usual and customary security clauses such as a confession of judgment and waiver of notice and appraisement. It is clear from the lease itself, as well as the testimony of Mr. Kavanaugh and Mrs. Berkett, that the lessees intended to develop the property commercially and that the lessors were aware of this. All four experts testified that lawyers using the term "mortgage" consider it to include the usual and customary security clauses. Furthermore, this court has observed that "undoubtedly the prevailing custom in the execution of conventional mortgages in this state is to include therein the pact de non alienando, confession of judgment, and waiver of appraisement." Gumpert v. Signal, 180 La. 59, 156 So. 174 (1934). While we agree with the lessors that they are not required to accept any mortgage submitted by any commercial lender, we hold that under the lease, they are obligated to permit the lessees to mortgage the property with an in rem mortgage containing the usual and customary security clauses such as a confession of judgment and waiver of notice and appraisement.
The court of appeal held that because minors were involved at the time the lease was signed, the lessors were required only to execute a "simple mortgage." This decision was based on jurisprudence that authority to execute a "mortgage" where minors and interdicts are involved confers only the authority to execute a mortgage not containing a confession of judgment and waiver of notice and appraisement. See Kling Mortgage Investment Co. v. Donovan, 178 La. 119, 150 So. 850 (1933); Scottish-American Mortgage Co. v. Ogden, 49 La.Ann. 8, 21 So. 116 (1896); Hendry v. Nicolosi, 126 So. 21, 71 (La.App. 1st Cir. 1961). In the cited cases, the tutor or curator received a general court order authorizing him to borrow money and execute a mortgage on behalf of minors and interdicts. These cases held that the court order did not authorize the execution of a mortgage containing a confession of judgment, pact de non alienando and waiver of appraisal and accordingly held such provisions unenforceable.
*648 The instant case is clearly distinguishable. In her petition for authority, Lois Brier Mayer, natural tutrix of the minors, stated that each minor owned an undivided one-sixth interest in the property and that she believed it would be "to the minors' advantage to enter into both the option to lease and the lease under terms and conditions offered and ... that the adults who are co-owners in indivision with the minors and who had a larger interest in the property, believe that both agreements are highly advantageous to all concerned." A copy of the lease was attached to the petition as an exhibit. The ninth article of the lease makes it clear that should the property be mortgaged, the minors, as lessors, would incur no personal liability. Additionally, the minors' interest in the property itself would be protected by the deposit of government bonds in an escrow account as security. The court order signed pursuant to the petition for authority specifically authorized the tutrix to lease the minors' interest in the property under the "terms and conditions set forth in the petition and exhibits attached." The lease, attached as an exhibit, included the provision in which the lessors agreed to permit the lessees "to mortgage" the leased property. The order further named Mrs. Berkett as her attorney-in-fact with authority to execute "all documents and papers necessary to effect the lease."
In view of the above facts, we conclude that the judge's order authorized not only the signing of the lease but also the mortgaging of the property with the usual and customary security clauses, including a confession of judgment and waiver of notice and appraisement. The court of appeal erred in holding otherwise.
Moreover, the two lessors who were minors at the time the lease was executed have accepted rental payments under the lease since reaching majority. Their acceptance of rent has clearly validated the lease in its entirety, including the mortgage provisions, by ratification. La.Civ.Code arts. 1785, 2228.
In conclusion, we hold that the lessors were obligated to permit the lessees to mortgage the property with an in rem mortgage containing the usual and customary security clauses such as a confession of judgment and waiver of notice and appraisement. By refusing to do so, the lessors breached the lease agreement and are liable in damages. Since the court of appeal concluded that the lessors were not obligated to execute such a mortgage and were therefore not liable in damages for their failure to do so, the court did not reach the issue of damages. We therefore consider it more appropriate to remand the case to the court of appeal to review the trial court's award of damages.

DECREE
For the reasons assigned, the judgment of the court of appeal is reversed and the case is remanded to the court of appeal for further proceedings consistent with the views herein expressed.
CALOGERO, J., dissents and assigns reasons.
LEMMON, J., dissents.
CALOGERO, Justice, dissenting.
The majority decision rests upon a determination that confession of judgment and waiver of notice and appraisement are usual and customary provisions in a mortgage; so that defendants, in agreeing to mortgage or permit lessees to mortgage, are charged with having agreed, impliedly, to permit execution of an in rem mortgage containing those provisions. While I would probably find it difficult to disagree with that position, I find it unnecessary to make that determination, for I would conclude that defendants/lessors simply were not required to permit or participate in a mortgage such as the one drawn by the Savings Life Insurance Company. That mortgage contained provisions which were clearly not compatible with the terms of the lease.[1]
*649 Essentially, the lease allows lessees to mortgage the property, with prior written consent of lessors, for the purpose of providing interim or permanent financing of the cost of physical improvements to be placed upon the property if certain conditions are first met. These conditions include the limitation that there be no personal or direct liability on the part of the lessors and that an escrow fund be established for the purpose among other things of reimbursing lessors should lessees default on the loan secured by the mortgage and lessors have to pay the loan or risk loss of the property.
As the majority notes, plaintiffs developed some of the property without the need for lessors to agree to a mortgage. They then wanted to construct a Smuggler's Inn Restaurant for which they needed a mortgage to secure financing. Plaintiffs presented the mortgage at issue to defendants and requested execution. Lessors refused, contending that their obligation was only to permit lessees to mortgage the property (or, inferentially, to join lessees in mortgaging it) and not to go along with a mortgage with an assortment of provisions at variance with the terms of the lease.
The tendered mortgage required essentially that lessors:
(1) waive all the statutory rights under Code of Civil Procedure Articles 2293, 2331, 2332, 2336, 2639, 2721, 2722, 2723, and 2724.[2]
*650 (2) confess judgment on the debt for construction secured by the mortgage
(3) subordinate their rights as lessors to the rights of the mortgagee
(4) assign the rent and rights to rent for the mortgaged property to the mortgagee
(5) mortgage the property to secure payment of insurance premiums, taxes and municipal charges in addition to the loan principal
(6) assign to the mortgagee all insurance payments which might be received for losses sustained, which could be applied at the mortgagee's option to the principal of the note whether or not the lessees were in arrears in repaying the loan
(7) assign to the mortgagee all awards received under the exercise of eminent domain, which awards could be applied to the principal of the note at the option of the mortgagee.
Our previous decisions concerning the authorization to execute a mortgage have been within the context of a minor or interdict being the grantor, the pertinent inquiry focusing on the question of court authorization. In those cases where the grant of authority did not specifically authorize the tutor/curator to waive the protections afforded by the laws of the state we construed the court authorization for the tutor or curator "to mortgage" to permit only a mortgage within the scope of the Civil Code and Code of Civil Procedure. E.g. Kling Mortgage Investment Co. v. Donovan, 178 La. 119, 150 So. 850 (1933); Scottish-American Mortgage Co. v. Ogden, 49 La.Ann. 8, 21 So. 116 (1896). The majority has found that adequate court authorization existed and also notes that the minors have now reached majority and have continued to accept rents. Nevertheless, I find the cited cases offer guidance in interpreting the term "to mortgage" when that term is used without qualification.
Some of the provisions of the submitted mortgage are contrary to, or inconsistent with those terms of the lease concerning lessors' obligation to allow lessees "to mortgage" the property. The escrow provision of the lease refers to lessors' receiving notice of the default on the mortgage and is in contemplation of lessors being called upon to pay the mortgage, the provision being designed to prevent sale, seizure or foreclosure of the property. The provisions contained in the submitted mortgage, at cross purposes with the escrow provision of the lease agreement, require lessors to waive demand for payment, notice of seizure and delay before sale. Waiver of these important statutory rights might expose lessors to the loss of their property before they become aware that lessees have defaulted on the note secured by the mortgage, and is contrary to the evident intent of the parties to the lease which contemplates that the lessors may fully protect themselves by being afforded a timely opportunity to use the escrow fund to keep the debt from being in default.
Lessees argue (and the trial court agreed) that lessors agreed to accept a commercially feasible mortgage. Lessees further contend that the pro-lender provisions are generally found in mortgages at the marketplace, and mortgages without all these waivers are generally not available. However, the terms of the lease do not provide that lessors will sign whatever mortgage as, at any given time, lessees find available in the money marketplace.
Code of Civil Procedure Article 2721 concerning executory process states that "[t]he sheriff shall serve upon the defendant a written notice of the seizure of the property." The Official Revision Comment states that this paragraph prevents a waiver of the sheriff's notice in all cases. The jurisprudence has interpreted the article in a manner consistent with the Comment. Neff v. Ford Motor Credit Co., 347 So.2d 1228 (La.App. 1st Cir. 1977); General Motors Acceptance Corp. v. Henderson, 228 So.2d 323 (La.App. 3rd Cir. 1969); Mack Trucks, Inc. v. Magee, 141 So.2d 85 (La.App. *651 1st Cir. 1962). In Buckner v. Carmack, 272 So.2d 326 (La.1973), this Court upheld the constitutionality of the Louisiana scheme of executory process.[3] However, the Court specifically stated that service of the writ of seizure and sale cannot be waived. Not only have the lessors not agreed in the lease to waive this notice, but they surely cannot be construed to have done so in light of Buckner.
The "to mortgage" provision of the lease states that the mortgage will finance the cost of physical improvements to be placed upon the leased property. The tendered mortgage disregards this limitation and provides that the mortgage secures not only the cost of physical improvements but also any sums advanced for the payment of insurance premiums on the building constructed and taxes and municipal charges levied against it. These items clearly are not costs of physical improvements.
Finally, Scottish-American, supra, and Kling, supra, held that the term "mortgage," without more, means a mortgage as envisioned by the Civil Code and Code of Civil Procedure. "Mortgage" in those codes is attended by significant rights designed to protect the mortgagor against the loss of his property. Just as a waiver of those rights must be spelled out with particularity in the mortgage, the intention to waive those same rights must be specifically included in the instrument evidencing the agreement "to mortgage" the property. Waivers contained in the mortgage are conspicuously absent from the lease agreement. These waivers cannot be so much as inferred in the lease when one construes the agreement "to mortgage" with the protective provisions of the escrow plan.
Normally the lender is in a position to dictate the terms of a mortgage: interest rate, duration, waiver of many and sundry Codal and statutory provisions, and virtually anything else not contrary to public policy. The borrower either accepts the lender's terms or he doesn't get the loan. The lessor who has simply agreed to mortgage or to permit the mortgaging of his leased property, however, as in this case, is in an entirely different position from the lessee/borrower. It is not necessarily in the interest of the lessor for the lessee to mortgage the property. In fact, he may prefer not to have the lessee do so, especially not on terms entirely dictated by the lender. This is so even where, as in this case, he is conventionally obligated to allow the lessee to mortgage the property. It is therefore not unnatural for the lessor/mortgagor to stand firm on the limitations of his obligation. That is what defendants in this case have done.
Defendants/lessors did not agree in the lease to enter into or permit entering into such a mortgage as may at any given time be "commercially feasible," a concept governed only by the dictates of the prospective lender, the need of the lessee/borrower and the state of the money market. Such an indefinite obligation on the part of the lessors could hardly have been contemplated by these exacting defendants who, with the escrow and other protective provisions, begrudgingly agreed to permit lessees "to mortgage." "Mortgage" has a specific meaning in our law and is attended by rights and obligations accorded by the codes. A waiver of rights is not to be presumed.
Implicit in the majority's remand to the Court of Appeal to review the trial court's award of damages is a finding that defendants were obligated to agree to the tendered mortgage. Because I believe that mortgage contained provisions irreconcilably inconsistent with the lease, I respectfully dissent.

ORDER
On joint motion of all litigants, this suit is hereby dismissed with prejudice.
NOTES
[1] 387 So.2d 1270 (La.App. 1st Cir. 1980).
[2] 390 So.2d 1344 (La.1980).
[1] Although the majority opinion sets forth a portion of the Ninth clause of the lease, I include that portion along with what I consider to be other pertinent parts of the same clause. I have underscored areas of particular relevance to this dissent.

"(A) LESSEE shall not place any mortgage, lien, privilege, or encumbrance on or against the leased property or permit any of its creditors to do so without LESSOR's prior written consent.
"(B) Upon request and during the primary term (first twenty years) of this lease, LESSOR agrees to permit LESSEE to mortgage the leased property or a portion thereof for the purpose of providing initial interim or initial permanent financing of the cost of physical improvements placed or to be placed on the property covered by the mortgage, provided the LESSEE first satisfies the following terms and conditions:
"1The mortgage shall involve and shall require no personal or direct obligation on the part of the LESSOR and shall bear only against LESSOR's land and more specifically, against that portion of the leased property specifically mortgaged.
"2Before any mortgage is placed on any of the leased property for initial interim or initial permanent financing for the purposes described above, LESSEE shall deposit with an escrow agent, fulfilling the requirements set forth in Subparagraph 3 of this Article, negotiable United States Bonds having a market value at the time of the deposit in escrow equal to or in excess of an amount referred to in this lease as the Security Amount, and the Security Amount shall be determined in the following manner:
* * * * * *
"4The Security Amount deposited in escrow shall be a security, but not the sole security, to insure the LESSEE's promise to hold LESSOR harmless and to indemnify him against loss by reason of the failure of LESSEE to fulfill any of its obligations under this lease, including but not limited to, his obligation to indemnify LESSOR for loss of any or all portions of the leased property because of foreclosure of any mortgage or seizure growing out of any lien, privilege or encumbrance which LESSEE may have placed or permitted to be placed by its creditors on the leased property without or with the LESSOR's consent.
"5Should LESSOR suffer a loss of the leased property or any portion thereof by reason of a mortgage by LESSEE or any lien, privilege, or encumbrance which LESSEE may have placed thereon, or permitted its creditors to place thereon, or should LESSOR receive notice of the default of said mortgage or should LESSOR pay, or be called upon to pay, any such mortgage, lien, privilege or encumbrance to prevent sale, seizure or foreclosure on or of the leased premises or a portion thereof by creditors of the LESSEE, then:
* * *"
[2] C.Civ.P. art. 2293 provides that the sheriff serve a judgment debtor with prompt notice of seizure of property.

C.Civ.P. art. 2331 requires publication of notice of the sale of property which has been seized.
Under C.Civ.P. art. 2332 the seized property must be appraised prior to the sale and C.Civ.P. art. 2336 prohibits the sale of the property for less than two-thirds of its appraised value.
According to C.Civ.P. art. 2639, before issuing a writ of seizure and sale, the clerk must issue upon the defendant a demand for payment of the amount due and the defendant has three judicial days in which to pay in order to prevent the issuance of the writ. The article prohibits the debtor's waiving this demand in the act of mortgage.
Articles 2721 through 2724 repeat the requirements of delay of seizure, advertisement of the sale and appraisal of the property for executory process.
[3] By executory process a creditor can effect the seizure and sale of property, without previous citation and judgment, to enforce a mortgage evidenced by an authentic act importing a confession of judgment. C.Civ.P. art. 2631 et seq. The mortgage presented to lessors is designed to support executory process.